THE MERIDEN TRUST & SAFE DEPOSIT COMPANY ET AL., EXECUTOR AND TRUSTEES (WILL AND ESTATE OF WALTER HUBBARD) *v.* BERTRAND E. SPENCER, ADMINISTRATOR, ET AL.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued October 4—decided November 6, 1940.

*Frederick H. Wiggin,* with whom, on the brief, was *J. Dwight Dana,* for the defendant Gloria Pierce and her guardian ad litem.

*Wallace W. Brown,* with whom was *Charles Welles Gross,* for the other defendants.

MALTBIE, C. J. The parties in this action are seeking a construction of the fifteenth paragraph of the will of Walter Hubbard, which reads as follows: "I give and bequeath unto my said trustees the sum of fifty thousand dollars, in trust, the net income thereof to be paid by my said trustees semi-annually to my niece, Bessie H. Pierce, during her natural life, and at her decease said trust fund shall be paid to the children of the said Bessie Pierce, then living." In the will the testator, aside from numerous legacies given outright to the beneficiaries and gifts to charity, gave to Bessie H. Pierce a life use of the house where he had resided, with its contents, without making any disposition of it at her death, and he established six trusts with life uses to one or more persons, in none of which did he make a specific gift of the remainder interest but in one of which he provided that upon the death of the life beneficiaries the trust fund was to become a part of the residue of his estate. The will contains a general provision that, upon the termination of any of the trusts created, the fund should become a part of the residue. Among the legacies he gave was one to Walter Hubbard Pierce, the son of Bessie H. Pierce, of $50,000. In the residuary clause, he directed that for a certain period one-third of the income should be divided among named beneficiaries, one-eleventh going to Bessie H. Pierce and Walter Hubbard Pierce each, and at the expiration of that period each of them took a like share in the principal. In a codicil to the will he bequeathed $50,000 to Mrs. Pierce; he established two other trusts for the life of named beneficiaries, in one of which he made no disposition of the principal at the expiration of the life use but provided that it should become a part of the residue of the estate, and in the other he directed that at the expiration of the life use the principal should be

divided equally among the children of the life bene-
ficiary "and the representatives of any deceased child,
who shall be living at the time of the death of the
said Robert Rand, the same to take per stirpes and
not per capita"; and he so changed the gift of the
residue as to shorten the period which was to elapse
before its distribution and provided that if any of the
beneficiaries named was not living at the expiration
of that period, his share would go to his children, but
if no children were then living the share should be
divided among the other beneficiaries named in the
paragraph and the child or children of any who had
deceased, living at the time of distribution.

The will was executed in 1905 and the codicil in
1908. The testator was a widower and childless. Mrs.
Pierce was a niece and the testator's favorite among
his near relatives. In 1887 he persuaded her to come
to reside with him, and she continued thereafter, until
1895, to be the sole member of and the head of his
household. In 1895 she married and thereafter, until
the death of the testator in 1911, at his insistence, she,
her husband and her son continued to live at the
testator's home as the only other members of the
household. Mrs. Pierce acted toward the testator as
a devoted daughter. Her son, Walter H. Pierce, was
born in 1900, was brought up in the testator's home,
and the testator was very fond of him and treated him
like a grandson. Walter H. Pierce married in 1922 and
had only one child, Gloria Pierce, born in 1923 and
now living. No other person whose relationship to the
testator was not at least as close as that of nephew
and niece was so well treated in the will as was Walter
H. Pierce. He died in 1935 and Mrs. Pierce died
in 1939.

The question at issue arises out of the claim of
Gloria Pierce that the word "children" in the fifteenth

paragraph of the will should be interpreted so as to include her, a grandchild, with the result that, as her father had died during the life of Mrs. Pierce, she became entitled, at the latter's death, to the principal of the fund. In interpreting a will, we are not at liberty to give effect to an intent which we may presume from the surrounding circumstances that the testator had, regardless of the language he has used in it, but we are confined to the intent which finds expression in the wording of the will. *Mitchell* v. *Reeves*, 123 Conn. 549, 556, 196 Atl. 785. "The accepted rule of interpretation of wills is that 'the primary and usual meaning of a word is to be given it unless the testator's use of it in another and reasonable sense is so clearly indicated, upon examination of the entire will, as to overcome its ordinary signification and satisfactorily establish the unusual meaning contended for.'" *First National Bank & Trust Co.* v. *Baker*, 124 Conn. 577, 582, 1 Atl. (2d) 283. The word "children" has a definite and generally accepted primary meaning of descendants in the first degree. Unless we can find in the words of the will before us, read in the light of surrounding circumstances, sufficient warrant to give to it, as used in the paragraph in question, a different meaning, we must construe it as applying only to such descendants.

The will and codicil were made within less than three years of each other; in the interval no material change in the circumstances surrounding the testator, so far as the record discloses, occurred; and both instruments evince the same general intent. They may, therefore, well be construed together. The will uses the word "child" or "children" seven times, and the codicil six times. In most of these instances the word is merely descriptive of the relationship of a named beneficiary to another person, and so far as the record

discloses it is used with its primary meaning. In the other instances where it is used to designate unnamed beneficiaries, there is nothing to indicate that any other meaning was intended. The will and codicil strongly indicate that the testator was not concerned with making the trusts which he set up complete dispositions of the funds, for, aside from the paragraph in the will directly involved in this action, the residuary clause in the codicil, and the single trust contained in it to which we have referred, he provided only life uses and made no disposition of the principal, leaving that to pass into the residue either by special provision or under the general clause making this disposition of funds where trusts had failed or terminated. In the case of the trust in which he made a disposition of the remainder interest to the descendants of the life beneficiaries, the language he used was specific as to the way in which it was to be disposed of. Had the testator intended in the fifteenth paragraph to dispose of the principal among more remote descendants of Mrs. Pierce than those in the first degree, it is a fair assumption that he would have made like provisions. In fact, reading the codicil as a whole, it is quite clear that, except for the provision just referred to, the mind of the testator did not reach beyond the beneficiaries named and their descendants in the first degree.

The fact that Bessie H. Pierce was thirty-eight years old when the will was made does not permit the assumption that the testator regarded it as impossible that she should have other children. In behalf of Gloria Pierce, it is strongly argued that it is to be assumed, in view of the testator's close relationship with and fondness for Mrs. Pierce and her son, Gloria's father, that he could not have intended, in the event the son died during the life of Mrs. Pierce, that his only child should not receive the principal. In ad-

dition to the legacies of $50,000 each made to Mrs. Pierce and Gloria's father, each received under the residuary clause about a quarter of a million dollars; under the provisions of that clause, had Walter H. Pierce died before it was distributable, any child or children he had would have received his share; and it may well be that the testator felt that in making the provisions he did, any children Walter H. Pierce might have would be well provided for. There is not any sufficient warrant in the language of the will, read in the light of the surrounding circumstances, to construe the word "children" in the fifteenth paragraph with other than its primary meaning of descendants in the first degree; *Carpenter* v. *Perkins*, 83 Conn. 11, 19, 74 Atl. 1062; *Day* v. *Webler*, 93 Conn. 308, 311, 105 Atl. 618; *Trowbridge* v. *Townsend*, 112 Conn. 104, 110, 151 Atl. 345; and to give effect to any assumed intent of the testator to use it as including grandchildren would transgress the proper function of the court in the construction of wills.

It is a sufficient answer to the questions presented in the reservation to say that the trust fund created in the fifteenth paragraph of the will became, upon the termination of the life use, a part of the residue of the estate and should be distributed under the residuary clause contained in the codicil.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.