MARY W. NELLIGAN & others, trustees, *vs.* FRANK J. LONG, JUNIOR, & others.

Suffolk. May 6, 1946. — November 29, 1946.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Devise and Legacy*, Issue, Children. *Trust*, Capital and income, Investments, Income beneficiary. *Words*, "Children, then living."

In a will containing several provisions for the payment of trust income and principal to "issue" of the testator's daughters, one of whom, an income beneficiary, had had two children living at the times of the execution of the will and the testator's death and had died after the testator leaving surviving her only one of her children and a grandson, born after the testator's death, son of her deceased child, a further provision of the will, that upon such daughter's death her share of the income should be applied for the benefit of her then living "children" until the termination of the trust, in the circumstances entitled the surviving child of the daughter to the whole of such share after the daughter's death, to the exclusion of the grandson.

Trustees who under a will received real estate, occupied by a corporation carrying on a quarrying and stone crushing business thereon, and also most of the shares of such corporation, with a direction "to carry on the . . . business . . . so long as the same shows a reasonable amount of profit on the investment," using therefor the existing plant and equipment and such real estate, properly paid over to the income beneficiaries, who included the testator's wife and daughters, all the rentals received from the corporation for use of the real estate and dividends on the corporate shares without setting aside from such income "a reserve against" and "for amortization of depletion of the wasting assets" for the benefit of the beneficiaries having remainder interests.

PETITION, filed in the Probate Court for the county of Suffolk on April 17, 1942, for allowance of trustees' accounts.

The case was heard by *Mahoney*, J.

*H. E. Foley*, for the appellant.

*D. H. Fulton*, for the accountants.

DOLAN, J.  This is an appeal from decrees allowing two accounts of the trust created under the will of Thomas F. Welch.  The appeal is that of Frank J. Long, Junior, a minor great grandson of the testator.  The first account, covering the period beginning January 5, 1922, and ending January 20, 1938, is rendered by the trustees named in the testator's will.  The other account (also denominated a first account) is that rendered by two of the trustees named in the will and a trustee appointed to fill a vacancy caused by the subsequent death of one of those nominated by the testator.  We shall refer to that account for clarity as the second account of the trust.  It covers the period from January 20, 1938, to December 31, 1941.  The case was heard by the judge upon the accounts and a statement of agreed facts, in effect a case stated.

The material facts are these: The testator died on November 25, 1920.  He was survived by his wife, Margaret, three daughters, Katherine A. Long, Mary W. Nelligan and Ellen L. Welch, now Ellen W. Godvin, and two grandchildren, the son Frank and the daughter Elinor of the testator's daughter Katherine.  His will was allowed on December 16, 1920.  His daughter Katherine A. Long died. on April 17, 1937.  She was survived by the daughter Elinor, now Elinor L. Graham (one of the present trustees), and a grandson Frank J. Long, Junior, the son of her son Frank who predeceased her.  Her grandson Frank is the appellant.  By his will the testator devised and bequeathed all his residuary estate to his three daughters in trust, to pay one third of the income to his wife, Margaret, specific sums in monthly payments to two of his sisters, the "entire gross income" from the "Stone House" to Sabina E. McLaughlin during her life, all expenses of maintaining the same to be paid out of the other income of the trust estate, and the remaining income one third to each of his daughters Katherine, Mary and Ellen during their respective lives.  The testator further provided in article 2 as follows: "(F) Upon the death of

said Ellen L. Welch, without issue, or Mary W. Nelligan, to pay the remaining net income in equal shares, among the survivor or survivors of my said children, Katherine A. Long, Ellen L. Welch and Mary W. Nelligan. (G) If the said Ellen L. Welch dies, leaving issue, to pay one third ($\frac{1}{3}$) of the remaining net income for the education, maintenance and support of said issue, until the termination of this trust. (H) Upon the death of said Katherine A. Long to pay one third ($\frac{1}{3}$) of the remaining net income for the education, maintenance and support of her children, then living, until the termination of this trust. (I) This trust shall continue during the lifetime of my said children, Katherine A. Long, Mary W. Nelligan and Ellen L. Welch, and during the lifetime of my wife, Margaret E. Welch of my sisters, Ellen Welch and Delia Welch, and of said Sabina E. McLaughlin; and at the death of all said above mentioned persons, the trust shall thereupon terminate and my trustee shall thereupon transfer and convey all of the trust property, including principal and income to the following persons and in the following shares: One third to Thomas F. Welch, Jr., if he is living at the time of the termination of this trust. One third to any issue of Ellen L. Welch living at the time of the termination of the trust, said issue to take in equal shares. One third to the issue of Katherine A. Long living at the time of the termination of the trust, said issue to take in equal shares. If the said Ellen L. Welch dies without issue said one third of the trust property, above given to her issue, shall be given to the issue of Katherine A. Long, so that said issue of Katherine A. Long shall receive two thirds ($\frac{2}{3}$) instead of one third, said issue to take the same in equal shares." The testator's daughter Katherine, as before noted, died on April 17, 1937. Since the death of Katherine, the share of income that had been payable to her has been paid to her daughter Elinor, the only child of Katherine who survived her, except that in the second account one half of the income from that share is shown as withheld pending the determination of the right of the appellant to share therein. None of the income of the trust estate has ever been paid to the appellant.

The contentions of the appellant are (1) that he is entitled to one half of the income from the trust estate that was formerly payable to his grandmother, the testator's daughter Katherine, and (2) that the trustees had a duty to "set aside out of the moneys received both for the use of the land and as dividends on the stock a reserve against depletion of the wasting assets included in the trust estate."

1. We now consider the first contention, postponing a recital of the provisions of the will of the testator and the other material facts bearing on the appellant's second contention until we dispose of his first contention.

We are of opinion that the appellant is not entitled to share in the income of the trust estate formerly payable to his grandmother, the testator's daughter Katherine. By article 2 (H) of the testator's will he provided that, upon the death of Katherine, the share of the net income therein bequeathed was to be paid by the trustees for the "education, maintenance and support of her children, then living, until the termination of this trust." Considered together with the terms of the trust concerning the payment of income to the other daughters of the testator and of the will read as a whole in the light of the circumstances known to the testator when he executed the will (*Ware* v. *Minot*, 202 Mass. 512, 516), we are of opinion that the testator did not intend that a grandchild of Katherine should receive any of the income that was payable to her in her lifetime, but rather intended that only children of Katherine living at her death should enjoy that share of the income until the termination of the trust. At the time of the execution of the will (November 15, 1920) Katherine had two children, Frank (the father of the appellant) and Elinor. It is a fair inference from the agreed facts that that was known to the testator when he executed the will. And since the appellant is a minor and the will was executed in 1920, it is evident that he was not then in being. It is also a proper inference that when the will was executed the testator's daughter Ellen was unmarried. [1] In the consideration of the foregoing facts

---

[1] In the appellant's brief it is stated that the testator knew that his daughter Mary, "though married, had no children."

concerning the circumstances attendant upon the execution of the will, it is to be noted that the testator died ten days after its execution.   It thus appears that, at the time of the execution of the will of the testator, he was acting with knowledge that his daughter Katherine did have children and that she then had no grandchildren, and with an understanding that his daughter Ellen might marry and might die leaving issue, or that she might die leaving no issue.   The appellant argues that the testator could not have intended to provide for the education, maintenance and support of the issue of Ellen should she die leaving issue, and at the same time to limit provisions for the same purpose on the death of Katherine to her children then living.   But by the use of the word "issue" in article 2 (G), (I), concerning the disposition of the share of income in the event of the death of Ellen, and in the provisions for the distribution of the trust estate upon the termination of the trust, the testator must be taken to have understood the meaning of the word "issue" and to have known the distinction between that word and the words "children, then living," which he used with respect to the disposition upon the death of Katherine of the share of the income payable to her during her lifetime (article 2 [H]).   *Boston Safe Deposit & Trust Co.* v. *Goldthwait*, 247 Mass. 434, 436.   *Warren* v. *Sears*, 303 Mass. 578, 585.   And we cannot say in the case of the children of Katherine, whom the testator knew, that his concern during the life of the trust was not for such of them as might be living at Katherine's death to the exclusion of more remote descendants not in existence when the will was executed or at his death.   Normally when the word children is used grandchildren are excluded.   Where there are either children or a child who fully answers the description of the word children, and where confining the bequest to them will fully satisfy the whole apparent design of the testator, grandchildren or more remote descendants may not share with them.   *Boston Safe Deposit & Trust Co.* v. *Nevin*, 212 Mass. 232, 236.   It is true that, "if a reading of the whole will produces a conviction that the testator must necessarily have intended an interest to be given which is not be-

queathed or devised by express or formal words, the court must supply the defect by implication and so mould the language of the testator as to carry into effect as far as possible the intention which t is of opinion that he has sufficiently declared." *Fitts* v. *Powell,* 307 Mass. 449, 454. *Hendrick* v. *Mitchell, ante,* 155, 160, and cases cited. In *Polsey* v. *Newton,* 199 Mass. 450, largely relied on by the appellant, that principle was applied to a bequest to the testator's son Nathan's "three children," when in fact Nathan had no children but the testator did have "three grandchildren," who were children of other children of the testator. In that case the court construed the words "three children" as meaning the "three grandchildren" of the testator. Otherwise the bequest would have failed. In the instant case no such construction of the plain words "children, then living," can be made properly. The words "children, then living," have particular force. They are not ambiguous. That description in making gifts over in certain event has been used frequently by testators, and in the absence of unusual circumstances has been held to create a vested interest subject to being divested in case any of the class described should die before the happening of the event, when, if then living, the gift was to be enjoyed. And in the present case the words "children, then living," that is, at the time of the death of Katherine, identified her daughter, then her only surviving child, as completely as though she had been mentioned by name. *Boston Safe Deposit & Trust Co.* v. *Doolan,* 307 Mass. 233, 236, and cases cited. See also *Boston Safe Deposit & Trust Co.* v. *Goldthwait,* 247 Mass. 434, 437; *Dickerman* v. *McGregor,* 278 Mass. 393, 396–397; *New England Trust Co.* v. *Berry,* 310 Mass. 35.

There was no error in the action of the judge in allowing the items of the accounts showing payments of the income from the trust estate to others to the exclusion of the appellant.

2. We proceed to a consideration of the appellant's contention that it was the duty of the trustees to provide "for amortization of depletion of the wasting assets of the trust."

The material facts pertinent to that contention may be summed up as follows: Article 4 of the will provides as follows: "I direct and instruct my said trustees and the executors appointed under this will to carry on the stone crushing and ledge business, now conducted by the West Roxbury Trap Rock Company on Grove Street in that part of said Boston, called West Roxbury, so long as the same shows a reasonable amount of profit on the investment and to employ therefor such machinery as I may possess at the time of my death, so far as the same may be essential for the proper conduct of said stone crushing business and to keep intact and use in connection with said business, the stone crushing plant and the ledge and all the real estate owned by me and situated on the easterly side of Grove Street, except such portions of said real estate as is now cut up into house lots, as shown by plans recorded with Suffolk Registry of Deeds." The real estate referred to in that provision consisted of one hundred thirty-one thousand two hundred forty-eight feet of land with the office building and dwelling house thereon located on Grove Street, West Roxbury, appraised in the trustees' inventory as of the value of $6,600; twenty-nine thousand seven hundred feet of vacant land on said Grove Street appraised at $300; and two million two hundred thirty-five thousand seven hundred fifty-eight feet of land and buildings on the easterly side of said Grove Street appraised at $36,000. Prior to his death the testator owned ninety-six of the one hundred shares of the West Roxbury Trap Rock Company, hereinafter referred to as the corporation. These shares were appraised as of the value of $14,400. The corporation was formed by the testator for the purpose of quarrying and crushing stone and removing the same from the real estate before described, and said real estate has been occupied exclusively, during the periods covered by the accounts before us, by the corporation in the pursuit of that business, paying a rental therefor. The aggregate amount of moneys received by the accountants from the corporation, during the periods of accounting, for the use of the land and the removal of stone therefrom was $204,650. The aggre-

gate amount of dividends received during the periods of accounting from the shares of capital stock of the corporation was $88,600. No part of the receipts for use of the land or by way of the dividends just mentioned has been allocated to the principal of the trust, but all of these receipts have been dealt with by the accountants solely as income. The appellant argues that these receipts were derived from wasting assets, that the accountants were under a duty to preserve the corpus of the trust estate against depletion by setting aside from income a reserve for that purpose and to pay to the income takers only the balance thereof, and that the will of the testator does not show a contrary intent. In support of this contention the appellant relies upon such cases as *Balch* v. *Hallet,* 10 Gray, 402, 404, *Kinmonth* v. *Brigham,* 5 Allen, 270, 278, and *Minot* v. *Thompson,* 106 Mass. 583, to the effect that, unless it is otherwise provided by the terms of the trust, the general principles governing investments in wasting assets should be applied.

It is settled that an unauthorized investment in wasting assets made by a trustee will not be sustained. The "rule is the same in regard to property which comes to the trustees from the testator, not specifically bequeathed, as it is in regard to making new investments," *Lannin* v. *Buckley,* 256 Mass. 78, 84; and in such case, in the absence of express authorization under the terms of the trust to retain such investments, it is the duty of the trustee to convert such investments within a reasonable time. *McInnes* v. *Whitman,* 313 Mass. 19, 28–29, and cases cited. In the instant case, however, there was express direction by the testator that the investments in question should be retained so long as they showed a reasonable amount of profit thereon. No contention is made by the appellant that, through the periods covered by the accounts before us, those investments have not shown a reasonable profit. A comparison of their inventory value with the receipts therefrom discloses that during the period covered by the accounts the investments have shown a reasonable profit. Properly no contention is made that the accountants were under a duty to convert the investments under discussion. Manifestly

their action in retaining them was within the powers contained in the will. This being so, as was said in part by the court in *Old Colony Trust Co.* v. *Shaw,* 261 Mass. 158, 167–168, "In a situation like the case before this court there is no room for the operation of the equitable doctrine that personal property given in general terms in trust to be enjoyed by several persons in succession imports an intent on the part of the testator that the gift should be converted into authorized investments and the income of the property so invested, or retained, be so divided or apportioned between the life beneficiaries and the remaindermen that the corpus of the fund shall be kept intact. . . . 'The real point in such cases is whether the power to continue or retain is to be construed as a power to continue or retain permanently, or only until the trustees can sell advantageously. In the first case, the inference is that the power was for the benefit of the tenant for life; in the latter, the inference is that it was merely for the convenient administration of the estate.' *In re Inman,* [1915] 1 Ch. 187, 191. 'The authority given by the will indicated a preference of the life tenant to this extent, which took the case out of the ordinary rule.' *New England Trust Co.* v. *Eaton,* 140 Mass. 532, 541. 'The power thus given to hold the property as they may receive it, is not an extension of the time for conversion, but authority to continue an investment as such, and the whole net income of investments thus authorized must go to the tenants for life by the terms of the will.'" It is also to be observed that the provisions for the testator's wife were preferred because she is a purchaser for value in the eye of the law (*Pope* v. *Pope,* 209 Mass. 432, 439; *Burgin* v. *Patch,* 312 Mass. 219, 223, and cases cited), and that testamentary provisions for the wife and children of a testator are to be construed liberally. The accountants in the present case properly paid to those entitled to income from the trust estate the entire net income therefrom in the respective proportions or amounts prescribed by the will.

*Decrees affirmed.*