THE FIRST NEW HAVEN NATIONAL BANK, EXECUTOR (ESTATE OF LUCIA T. CLARK), ET AL. *v.* THE FIRST NEW HAVEN NATIONAL BANK, TRUSTEE (ESTATE OF ELLEN L. CLARK), ET AL.

HENRY C. DEMING ET AL. *v.* THE FIRST NEW HAVEN NATIONAL BANK, TRUSTEE (ESTATE OF ELLEN L. CLARK)

MARJORY L. JENKINS ET AL. *v.* THE FIRST NEW HAVEN NATIONAL BANK, TRUSTEE (ESTATE OF ELLEN L. CLARK), ET AL.

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

Argued February 1—decided March 1, 1966

*Lawrence J. Matzkin* and *John W. Barnett,* with whom were *Charles C. Kingsley* and *Perry Graicerstein,* for the appellants (plaintiffs in the second and third cases).

*Curtiss K. Thompson,* with whom was *H. Chandler Clark,* for the appellant (plaintiff Moulton in the first case) ; with him also was *Arthur W. Chambers,* for the appellant (named plaintiff in the first case).

*Robert J. Engelman,* with whom was *Max H. Schwartz,* for the appellee (defendant Bessie G. Tester, administratrix, in the first and third cases).

*Charles J. Parker,* for the appellee (named defendant) in each case.

ALCORN, J. Ellen L. Clark of New Haven died on January 9, 1937, at the age of seventy-five. She

left a will which she had made on September 12, 1925. On that date her closest living relatives were her married daughter, Lucia T. Meyer, age twenty-nine; her sisters, Anna F. Tester, age fifty-six, and Helen F. Treat, age fifty-four; and a stepmother, Julia A. Treat, age eighty-one. Her will, after providing for the payment of debts, bequeathed all jewelry, clothing and household effects to her daughter, Lucia, and then established two trusts. The first of these was a trust of $15,000 "[t]o pay over to my sister, Helen F. Treat, all of the rents, profits and income thereof during the term of her natural life, if she survives me; in the event she does not survive me, or at her death if she be survived by my step-mother, Julia A. Treat, then I direct my said Trustee to pay over the rents, profits, and income of said trust fund to my step-mother, Julia A. Treat, for and during the term of her natural life; and at the death of my sister, Helen F. Treat, if she survive me and also survives my step-mother, Julia A. Treat, or in the event my said step-mother survive me and my said sister, Helen F. Treat, or in the event that neither my sister, Helen F. Treat or my step-mother, Julia A. Treat, survive me, then I direct my said Trustees to hold said trust for my daughter, Lucia T. Meyer, under the same and similar conditions as set forth in Paragraph Four (4) of this Will."

The fourth paragraph of the will created the second trust, which consisted of the residue of the testatrix' estate "to hold, manage, care for, invest, reinvest, and keep invested, and if necessary, from time to time to change the form of investment thereof, and pay the income therefrom after all expenses and taxes are paid, to Lucia T. Meyer, of said Town of New Haven, during her lifetime but

after said Lucia T. Meyer shall reach the age of fifty (50) years, I direct my said Trustees to pay, in addition to the above income, annually, the sum of one thousand ($1,000) dollars of the principal of said Trust Fund, to said Lucia T. Meyer for and during the remainder of her natural life, conditioned, however, that said Lucia T. Meyer request the same in writing from said Trustee, and at her death to pay and deliver over the remaining principal of said Trust Fund absolutely and forever, to any of her children surviving her, or in the event that she has no surviving issue, then said principal of said Trust Fund shall be paid absolutely to my heirs."

By a codicil dated December 12, 1931, the testatrix named a new executor and trustee but in all other respects confirmed and republished her will. At that time, her closest living relatives remained the same as when the will was made. Her stepmother died four years later in 1935.

When the testatrix died in 1937, her two sisters and her daughter survived her. Her sisters, Anna F. Tester and Helen F. Treat, died in 1945 and 1947, respectively. Following the death of the testatrix, her will and codicil were duly probated, and, after the death of Helen F. Treat in 1947, the trustee, with the approval of the Probate Court, paid Lucia $1000 annually from 1947 to 1960, inclusive, out of the principal of the trust under the fourth paragraph of the will.

Lucia died on January 14, 1961, without issue and leaving no husband surviving. The defendant bank, as trustee, filed its account in each trust in the Probate Court and sought the ascertainment of the distributees and an order of distribution of the principal. The Probate Court determined the dis-

tributees of the remaining principal in each trust to be the estate of Helen F. Treat and the estate of Anna F. Tester.

Three appeals were taken to the Superior Court from the probate decrees. In the first appeal, the plaintiff bank, as executor of Lucia's will, and the plaintiff Horace P. Moulton, as a legatee under that will, appealed, claiming that Lucia's estate is the sole distributee of the residue of the trusts. They argue that the heirs are to be determined at the testatrix' death and that distribution should be made to the estate of Lucia as sole heir. In the second appeal, Henry C. Deming, Lester F. Deming, Alice B. Forsberg and Maude B. Clark, claiming to be "second cousins once-removed" of the testatrix, Ellen L. Clark, assert that they are the distributees of the residue of the trusts. It is their claim that the testatrix' heirs are to be determined at the termination of Lucia's life estate and that the residue is distributable to them. The third appeal is by Marjory L. Jenkins and Laura L. Princehouse, who make the same claims of relationship and the same claim for distribution as that made in the second appeal. The guardian ad litem appearing for the undetermined heirs of the testatrix supports the claim of the cousins.

It is the claim of the Tester estate, which, with the Treat estate, has been found by the judgment appealed from to be the proper distributee of the residue, that the testatrix' heirs are to be determined at the date of the testatrix' death but that Lucia is to be excluded from the class.

Following a trial, the Superior Court affirmed the decrees of the Probate Court and dismissed all three appeals. The plaintiffs in each case have appealed from the judgment rendered, and, on stip-

ulation of all parties, the appeals have been combined in a single record. Practice Book § 606. The trial court has made a finding which is not subject to correction in any material respect. The testatrix' daughter, Lucia, having died without issue, the basic question presented by all three appeals is whether the heirs to whom the testatrix directed the principal of the trust under the fourth paragraph of her will to be distributed are to be determined as of the date of the testatrix' death or at the death of Lucia, the life tenant. No administration has been granted on the estate of Helen F. Treat, but the beneficial interest in her intestate estate is represented by the executor of Lucia's estate, since Lucia is Helen's sole heir at law.

The law favors the early vesting of estates. *Howard* v. *Batchelder,* 143 Conn. 328, 334, 122 A.2d 307; see *New York East Annual Conference* v. *Seymour,* 151 Conn. 517, 520, 199 A.2d 701. Consequently, when a legacy given to a class is to be paid at a future time, it is usually held to vest in interest at the date of the testator's death unless a contrary intent is disclosed in the will. *Kimberly* v. *New Haven Bank N.B.A.,* 144 Conn. 107, 114, 127 A.2d 817; *Budington* v. *Houck,* 134 Conn. 72, 75, 54 A.2d 671; *Union & New Haven Trust Co.* v. *Ackerman,* 114 Conn. 152, 160, 158 A. 224; *Will of Latimer,* 266 Wis. 158, 63 N.W.2d 65. The intent of the testator as expressed in the will as a whole is the decisive factor, however, and that intent must be determined from the language used in the light of the surrounding circumstances at the time the will was made. *Frey* v. *Greenberg,* 151 Conn. 663, 667, 202 A.2d 142; *Warren* v. *First New Haven National Bank,* 150 Conn. 120, 123, 186 A.2d 794; *Hartford Connecticut Trust Co.* v. *Gowdy,* 141 Conn. 546, 550, 107

A.2d 409. Included in the surrounding circumstances are the condition of the testator's estate, "his relations to his family and beneficiaries, and their situation and condition". *Connecticut Bank & Trust Co.* v. *Lyman,* 148 Conn. 273, 279, 170 A.2d 130. The intent so expressed, therefore, may compel a holding that the vesting occurs at the termination of the life estate. *Budington* v. *Houck,* supra, 80; *Union & New Haven Trust Co.* v. *Ackerman,* supra, 164; *Tingier* v. *Woodruff,* 84 Conn. 684, 690, 81 A. 967.

In addition to the facts already recited, the trial court has found that, when the testatrix made her will in 1925, her father, mother and husband were dead. Lucia was her only child. Her sister Anna had married George E. Tester in 1912. Her sister Helen had never married and was a frail person, suffering from a curvature of the spine. Helen and the stepmother lived, during the 1920's, with Anna and her husband. The testatrix maintained close family ties with her two sisters. Prior to 1919 they and Lucia spent vacation periods with second cousins of the testatrix, who were members of the Lane and Moulton families. At one time the testatrix considered the plaintiff Horace P. Moulton to be her nearest relative after her daughter and her sisters. The testatrix had numerous other relatives who were descended from her great grandparents, some of whom, including the plaintiffs in the Deming appeal, were strangers to her.

Lucia had married Chester A. Meyer in 1920, and the testatrix knew that the marriage was an unhappy one. Temporary separations had occurred, and, in March, 1930, Lucia's husband obtained a divorce on the ground of Lucia's desertion since November, 1926. The testatrix was devoted to Lucia

and lived with her part of the time between 1920 and 1937. Lucia was employed in various positions from a year or more before her marriage until a year or two before her death  She was a friendly, gregarious person of the highest character and a liberal spender.  In contrast, the testatrix was dignified, reserved and conservative in money matters.  She relied on Anna's husband, George E. Tester, a bank officer, for financial advice and advice about her will, which he drew.  At the time of making her will, her estate totaled in the neighborhood of $35,000 to $50,000 and consisted of bank accounts and securities, part of which she had inherited from her husband.  Her gross estate at death was appraised at $132,118.16.

From this pattern of family relations, as found by the trial court, there emerges the picture of a mother, conservative in financial matters and intent upon providing for an only daughter to whom she was devoted and whose material welfare transcended all else.  While she recognized an obligation to her sisters and her aged stepmother, that obligation was secondary.  Her married sister Anna could be assumed to be adequately provided for by her husband.  The possible needs of her frail, maiden sister Helen and her aged stepmother were not to be overlooked.  Barring accident or unforeseen illness, however, the probability of either of them outliving Lucia could be discounted.  Lucia was gainfully employed, but, as she neared normal retirement age, her financial needs would likely increase.  Her marriage, which was in jeopardy when the will was made, had ended when the will was republished in all material respects by the codicil.  But, at Lucia's age, the prospect of her having issue, either as a result of the Meyer marriage or of a subsequent

one, was real. Any such issue should be provided
for, but, in the event that Lucia's relations with
Chester A. Meyer improved, the possibility of his
inheriting was to be guarded against. If Lucia
died without issue, provision must be made for
someone in the blood line to take, and the logical
designation was the testatrix' heirs. Finally, the
amount available for distribution could not be
ascertained until the amount of the principal drawn
by Lucia could be known.

The manner in which the foregoing circumstances
were provided for in the will demonstrates the
intent that those who should take as heirs were to
be determined at the time of Lucia's death without
issue. The will gave all that the testatrix appar-
ently thought it necessary to give to her sisters,
who were her next closest relatives after Lucia. No
gift was made to Anna. Despite its ambiguity the
gift in trust for Helen provided a modest compe-
tence to her for life and indicates the testatrix' rea-
sonable expectation that both the stepmother and
Helen would predecease Lucia, events which actu-
ally occurred. No provision was made for the con-
tingency of Lucia's dying before them. There is no
indicated intent that either Helen's estate or Anna's
estate should serve as a mere conduit through which
any part of the residue of the trusts could pass to
unknown persons at Lucia's death without issue.

The will gives Lucia no more than the income
of the trust for life with a limited right to draw
on the principal. We find nothing to bring into
play the incongruous result of creating an addi-
tional vested remainder in Lucia's estate, as would
be the case if the presumption of early vesting were
to apply. *Matter of Carlin,* 6 App. Div. 2d 281,
176 N.Y.S.2d 112, aff'd, 6 N.Y.2d 914, 161 N.E.2d

19. Had that been the testatrix' intent, an outright gift of the residue of the estate or a power of appointment over it would have been the logical provision for the testatrix to have made. See *Close* v. *Benham,* 97 Conn. 102, 109, 115 A. 626. Such a disposition, however, would not have afforded a safeguard against either Lucia's liberal spending habits or the possibility of the residue passing to Lucia's husband. The only reasonable interpretation of the provision made for Lucia is that she is to be excluded from the class of heirs of the testatrix. *Union & New Haven Trust Co.* v. *Ackerman,* 114 Conn. 152, 161, 158 A. 224.

We conclude that the expressed intent of Ellen L. Clark is that distribution of the principal remaining in the trust funds established under paragraphs 3 and 4 of her will should be made to her heirs to be determined as of the date of the death of the life tenant, Lucia T. Meyer, without issue. *Matter of Sayre,* 2 N.Y.2d 929, 141 N.E.2d 920; *Merrill Trust Co.* v. *Perkins,* 142 Me. 363, 53 A.2d 260; *Will of Latimer,* supra; Restatement, 3 Property § 308, comment k.

In the appeals in the second and third cases, applications were made for allowances for counsel fees and expenses which the trial court, in the judgments in those cases, denied. This action by the court was correct. Section 52-251 of the General Statutes provides for such an allowance in an equitable action brought by a fiduciary for the construction of a will or for advice as to the administration of an estate or a trust. The present appeals from probate are not proceedings embraced within the statute.

There is error in part in the second and third cases, the judgment in each of these cases is set

aside insofar as it dismisses the appeal from the orders of the Probate Court, and each case is remanded with direction to sustain the appeal and remand the case to the Probate Court with an order to ascertain the heirs and distributees in accordance with this opinion; there is error in the first case, the judgment is set aside and the case is remanded with direction to sustain the appeal and remand the case to the Probate Court with an order to ascertain the heirs and distributees in accordance with this opinion.

In this opinion the other judges concurred.