HARTFORD NATIONAL BANK AND TRUST COMPANY, TRUSTEE (ESTATE OF MARY B. BRAINARD) *v.* ANNE C. VONZIEGESAR ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued October 11—decided December 21, 1966

*Francis J. McNamara, Jr.,* with whom were *John F. Spindler,* and *Howard S. Tuthill,* for the appellant-appellee (defendant Edgar O. Appleby, executor [estate of Alessandra C. Appleby]).

*Palmer S. McGee, Jr.,* with whom was *Charles W. Page,* for the appellee-appellant (named defendant).

*Arthur L. Shipman, Jr.,* with whom was *David Schwartz,* for the appellees (defendant Frances S. Appleby et al.).

*John C. Parsons,* appeared for the plaintiff.

HOUSE, J. This action was brought by the plaintiff, as successor trustee of an inter vivos trust, seeking an interpretation of the trust instrument so that the proper distributees of a portion of the corpus might be determined. The trust was created on January 22, 1919, by Mary B. Brainard, hereinafter referred to as the settlor. In two clauses at the commencement of the trust instrument, the settlor recited previous gifts to all her children with the exception of a deceased daughter, who was "represented by a daughter Marion, and a son Ward," and expressed her desire to make provision for these two grandchildren "during the lives of said grandchildren, and the life of the survivor of them, or, in case of the death of either or both leaving children, for the benefit of such children, or otherwise for the benefit of the children" of the settlor. Then, after reciting the conveyance of the trust res to the trustee, the trust instrument gives direction for the administration and distribution of the trust income and principal. We are not concerned with

the operation of the provisions of the trust during the lives of the two life tenants, Marion and Ward, except to note that during their lives they were each to receive one-half of the net income of the trust. Nor is any question raised as to the principal portion of the trust for Marion, who is still alive. The specific problem arises over the proper final distribution of the portion of the trust held for Ward during his lifetime.

Ward Cheney died in 1963. He was the father of two children: the defendant Anne C. VonZiegesar, born in 1929, who survived him, and Alessandra C. Appleby, born in 1927, who predeceased him and who is survived by four minor children, who are defendants, and her husband, Edgar O. Appleby, who, as executor of her will, is also a defendant. The parties do not question that, under the terms of the trust, one-half of the res held for Ward during his lifetime is to be distributed to Anne, his living daughter. The problem arises over the proper distribution of the remaining half, and the solution involves a construction of three paragraphs of the trust instrument which provide for distribution by the trustee upon the death of either of the settlor's grandchildren, the life tenants, Ward and Marion.[1]

The case was decided in the trial court on the basis of a stipulation of facts. The court concluded

[1] "2. Upon the death of either grandchild to pay to the child or children of such grandchild one-half the income of said fund, or if there be more than one, to divide the same equally between such children until said child, or if more than one until the youngest of said children, shall have attained the age of twenty-one years, then to pay to such child or children one-half the principal of said trust fund, and if more than one, to divide said property equally between such children.

"3. In case of the death of either grandchild leaving no child or children living, or in case no child of said grandchild shall attain the age of twenty-one years, to pay the principal, or to hold

that one-half of Ward's interest in the trust vested upon his death in Anne, his living daughter; that it was the settlor's intention that on Ward's death his child or children equally should take; that, as used in the trust, the words "child and children" include descendants, and accordingly the four children of the deceased Alessandra are entitled to share equally the remaining half of the trust. From the judgment based on these conclusions, Appleby, as executor under the will of Alessandra, has appealed, claiming that not her children but her estate is entitled to the one-half interest. Anne filed a cross appeal with the proviso "that, if the Court finds no error on the original appeal, the Court is requested to treat this cross appeal as withdrawn."

There is no error in the judgment of the trial court in directing distribution of one-half of Ward's interest in the res to Anne, who is more than twenty-one years of age, and this portion of the judgment is not attacked on the appeals. This distribution to her as a surviving child of Ward is clearly directed by the express language of the trust.

There is, however, merit to Appleby's assignment of error in the conclusion of the court that the words "child" and "children" as used in the trust instrument include descendants more remote than immediate offspring. The instrument repeatedly uses

the same and pay the income thereof to the other grandchild or to the child or children of said other grandchild according as the other half of said trust fund may have been paid, or under the same terms as said other half may be held at that time.

"4. In case both of said grandchildren die leaving no child or children living, or in case no child of either such grandchild shall attain the age of twenty-one years, to pay the principal of said trust fund to my children and the child or children then living of any child of mine who may have died, to be divided equally between them per stirpes."

the terms "child" and "children" and "grandchild" and "grandchildren" in their generally accepted primary meaning of descendants in the first or second degree, respectively, and we find no justification for the construction adopted by the trial court that the grandchildren of a grandchild of the settlor are included within the term "children of such grandchild." *Meriden Trust & Safe Deposit Co.* v. *Spencer,* 127 Conn. 261, 264, 16 A.2d 349; *Trowbridge* v. *Townsend,* 112 Conn. 104, 110, 151 A. 345; *Mooney* v. *Tolles,* 111 Conn. 1, 6, 149 A. 515; *Day* v. *Webler,* 93 Conn. 308, 311, 105 A. 618; *Carpenter* v. *Perkins,* 83 Conn. 11, 19, 74 A. 1062. "Normally when the word children is used grandchildren are excluded. Where there are either children or a child who fully answers the description of the word children, and where confining the bequest to them will fully satisfy the whole apparent design of the testator, grandchildren or more remote descendants may not share with them." *Nelligau* v. *Long,* 320 Mass. 439, 443, 70 N.E.2d 175; *Old Colony Trust Co.* v. *Attorney General of the United States,* 326 Mass. 532, 534, 95 N.E.2d 649; see also *Matter of Villalonga,* 6 N.Y.2d 477, 480, 160 N.E.2d 850; note, 14 A.L.R.2d 1242 (supplementing note, 104 A.L.R. 282); Restatement, 3 Property § 285; Thompson, Wills (3d Ed.) § 276.

There was error in the conclusion of the trial court that the four children of Alessandra should take as "children" of their grandfather, Ward, the share which his child, their deceased mother, would have taken if she had been living at Ward's death.

It is the contention of Appleby that this trust created a remainder after the life estate of Ward, which remainder was a class gift to his child or children and which remainder vested in Alessandra,

his first child, as soon as she was born, subject to opening in favor of a later born child such as Anne. In this contention he relies on such cases as *Trowbridge* v. *Townsend,* 112 Conn. 104, 112, 151 A. 345, *Norton* v. *Mortensen,* 88 Conn. 28, 31, 33, 89 A. 882, and *Bartram* v. *Powell,* 88 Conn. 86, 89, 89 A. 885. He further contends that Alessandra's half interest in the remainder, being thus vested, was not divested by her death during the lifetime of the life tenant, her father, but remained in her estate subject to transmission under the terms of her·will.

We had recent occasion in *First New Haven National Bank* v. *First New Haven National Bank,* 153 Conn. 490, 496, 217 A.2d 710, to review the problem of the vesting of trust estates where the grant was for life with remainder over. We there noted that the law favors the early vesting of estates. *Howard* v. *Batchelder,* 143 Conn. 328, 334, 122 A.2d 307; see *New York East Annual Conference* v. *Seymour,* 151 Conn. 517, 520, 199 A.2d 701. Consequently, in the absence of a contrary intent disclosed in the trust instrument, when a remainder given to a class is to be paid at the termination of a life estate, it is usually held to vest in interest upon the creation of the trust if a remainderman is then in existence, or, if none is then in existence, at the time when a member of the remainder class comes into existence. *Kimberly* v. *New Haven Bank N.B.A.,* 144 Conn. 107, 114, 127 A.2d 817; *Budington* v. *Houck,* 134 Conn. 72, 75, 54 A.2d 671; *Union & New Haven Trust Co.* v. *Ackerman,* 114 Conn. 152, 160, 158 A. 224; *Bartram* v. *Powell,* 88 Conn. 86, 89, 89 A. 885; *Norton* v. *Mortensen,* 88 Conn. 28, 31, 89 A. 882. As we reaffirmed in the *First New Haven National Bank* case (p. 497), however, this rule of construction is in every case effective only in the

absence of a contrary intent disclosed in the trust instrument. The intent of the settlor is the decisive factor, and this expressed intent "may compel a holding that the vesting occurs at the termination of the life estate." Id., 497; *Budington* v. *Houck,* supra, 80; *Union & New Haven Trust Co.* v. *Ackerman,* supra, 164; *Tingier* v. *Woodruff,* 84 Conn. 684, 690, 81 A. 967. The cardinal rule of construction of all trusts, whether created by will or inter vivos agreement, is to find and effectuate the intent of the testator or settlor. *Hartford National Bank & Trust Co.* v. *Harvey,* 143 Conn. 233, 239, 121 A.2d 276; *Hooker* v. *Hooker,* 130 Conn. 41, 54, 32 A.2d 68.

An examination of the trust instrument in this case compels the conclusion that, since Alessandra predeceased her father, the life tenant, neither her estate nor her children are entitled to any share in the distribution of the trust upon his death. On the contrary, the clear intent of the settlor, as shown by the language used in the trust agreement, was that, on the death of the life tenant, distribution should be made to such child or children of the life tenant as were then living. This expressed intent must prevail over a presumption in favor of early vesting.

In the second clause in the preamble to the trust, the settlor expressed her general intent. This intent was to benefit her two grandchildren during their lives and, upon the death of either "leaving" children, to benefit "such children," i.e., only a child who was left at the death of her grandchild was to receive benefits. See *Morgan* v. *Morgan,* 5 Day 517, 524. A deceased child would not be left and could receive no benefit from the distribution of an estate not made until after his death.

The dispositive clauses of the trust instrument

also indicate the intention that a child of the life tenant must survive him to share in a distribution of the remainder. Paragraph 2 directs that, on the death of the life tenant, the trustee should pay income "to the child or children" of the deceased grandchild or "if there be more than one," to "divide the same equally between such children until said child, or if more than one until the youngest of said children, shall have attained the age of twenty-one years." Even if we disregard any claim of significance in the grammatical use of the verb "be" in the foregoing clause, since only a living child can grow to attain the age of twenty-one years, it is apparent that the trust contemplated a living child at the time of payment, and this contemplation necessarily required that the child survive the life tenant. Further confirmation of the settlor's intention is found in the direction in this same paragraph that, when principal is paid, it is to be paid to "such" children, referring to those entitled to income, hence the need that the child or children be alive and survive the life tenant.

The correlative provisions of paragraph 3 of the trust show the same intent. This paragraph expressly provides that, "[i]n case of the death of either grandchild leaving no child or children living," the interest of such grandchild is to be held for the benefit of the settlor's other grandchild and his child or children. This paragraph also provides for a substitutionary gift over in the event that no great-grandchild of the settlor attains the age of twenty-one.

Considering the third possibility of the order of life and death among her grandchildren and great-grandchildren, the settlor in paragraph 4 provides for the contingency that both of her grandchildren

die leaving no child or children living or that no child of a grandchild should attain the age of twenty-one, in either of which events the settlor directed distribution to be made to her own children "and the child or children then living of any child of mine who may have died." The very provision for the substitution of another class, her own children, is an indication of the settlor's intent that survivorship of the life tenant was a condition precedent to the taking by any child of the life tenant. *Budington* v. *Houck,* 134 Conn. 72, 76, 54 A.2d 671 (quoting from *New York Life Ins. & Trust Co.* v. *Winthrop,* 237 N.Y. 93, 102, 142 N.E. 431 [Cardozo, J.]). It is also significant that in the provisions for this substitutionary gift over to her own children, the settlor expressly provided for distribution not only to her living children but to "the child or children then living of any child of mine who may have died." The presence of this express provision for living children of a deceased child in paragraph 4 makes more significant the absence in paragraph 2 of any similar provision for the child or children of any great-grandchild who may have died.

If we take the trust instrument as a whole, the conclusion is inescapable that the settlor's dominant intent expressed therein was to benefit the two living children of her deceased daughter, and then, upon the death of either of them, such of that grandchild's children as were then living and should attain the age of twenty-one, with a contingent substitutionary gift over in default of any such living great-grandchildren to her own children per stirpes. Accordingly, since her great-granddaughter Alessandra was not living at the termination of the precedent life estate, neither Alessandra's estate nor her children are entitled to any distributive share

of the trust, which instead must be distributed in its entirety to Anne, the child of Ward who did survive him and attain the age of twenty-one.

It is unnecessary to consider any of the remaining assignments of error. Since the case must be remanded, however, we are impelled to comment on one other aspect of the judgment appealed from. Among the claims for relief set out in its complaint, the plaintiff trustee requested "[t]hat the sums to be allowed out of the trust estate to the several parties hereto for their expenses and counsel fees may be fixed by the Court." Such an allowance is expressly authorized by General Statutes § 52-251 in an action brought to the Superior Court by a fiduciary seeking the advice of the court as to the administration of a trust.

The judgment in this case as signed by the trial judge makes no such allowance as the plaintiff requested but states "it is further ordered that the sums to be allowed out of the trust estate to the several parties hereto for their expenses and counsel fees be determined by the Court hereafter." As we said in *Hewitt* v. *Wheeler School & Library,* 82 Conn. 188, 195, 72 A. 935, in which case the trial court by a similar statement in the judgment attempted to retain jurisdiction: "This clause must be regarded as mere surplusage. The judgment rendered was a final one, and no further action in the cause, of a judicial nature (which that apparently contemplated would clearly be) can be had in the Superior Court. *Horton* v. *Upham,* 72 Conn. 29, 32, 43 Atl. 492." See also *Morgan* v. *Morgan,* 104 Conn. 412, 416, 133 A. 249. The equities recognized by General Statutes § 52-251 should not be defeated by the erroneous attempt of the trial court to retain partial jurisdiction over the cause.

There is error, the judgment is set aside and the case is remanded with direction to render judgment in accordance with this opinion, advising the trustee that it should distribute the one-half of the principal of the trust distributable upon the death of Ward Cheney to the defendant Anne C. VonZiegesar, the sole surviving child of Ward Cheney, and with direction to allow to each of the parties such reasonable sum for expenses and counsel fees as the court deems equitable, which allowance shall be taxed as costs in the cause, to be paid out of the estate in accordance with General Statutes § 52-251.

In this opinion the other judges concurred.