HARTFORD NATIONAL BANK AND TRUST COMPANY, TRUSTEE (ESTATE OF SYLVESTER C. DUNHAM) *v.* SYLVIA D. BIRGE ET AL.

KING, C. J., HOUSE, COTTER, THIM and RYAN, Js.

Argued December 9, 1969—decided January 6, 1970

*Laurence O. Pratt, Jr.,* for the plaintiff.

*Valentine J. Sacco,* for the defendant Paul Volpe, administrator d.b.n., c.t.a. (Estate of Donald A. Dunham, Jr.), et al.

*John D. Garrison, Jr.,* for the defendant Leslie D. Rohan et al.

*Ralph G. Elliot,* with whom, on the brief, was *Henry P. Bakewell,* for the named defendant.

KING, C. J. This is a reservation, on an agreed statement of facts, brought by the plaintiff as trustee, seeking the construction of certain trust

provisions in the last will and testament of Sylvester C. Dunham. The testator died, a resident of Hartford, on October 26, 1915, leaving a will dated September 13, 1915. He was survived by his wife, Mary A. Dunham, by his son, Donald A. Dunham, and by Donald's two young children, Sylvia (now Mrs. Sylvia [Dunham] Birge), who is still alive, and Donald A. Dunham, Jr., who was later killed in World War II on August 1, 1944.

In Article I of the will all real estate, all personal property in the residence in Hartford, twenty-five shares of stock in The Travelers Insurance Company, and $100,000 were given to the testator's wife, outright and absolutely.

In Article II, the son, Donald, was bequeathed, outright and absolutely, twenty-five shares of stock of The Travelers Insurance Company and $50,000.

In Article III, relatively small, although substantial, bequests were made to Donald's wife, to the testator's brother, to his sister-in-law and to two friends, each conditioned on the beneficiary surviving the testator.

In Article IV of the will, a trust fund of $20,000 apiece was established for each of the two grandchildren, Sylvia and Donald, Jr., under the terms of which each was to receive the income until respectively attaining the age of twenty-five when each was to receive, and in fact did receive, the principal.

In Article V, a trust in the principal sum of $150,000 was established, the income to be paid to the testator's wife for her life, and at her death one-half of the principal was to be paid outright and absolutely to the testator's son, Donald, if he was then living (as he was), and the income from the other half was to be paid to Donald during his life.

Article VI, which is the clause in controversy, pro-

vided as follows: "After the death of both my wife and my son, whatever may remain of said trust fund shall be divided by said trustee into as many shares as he, my son, may leave children including posthumous children if any, and one share shall vest in and shall be delivered by said trustee absolutely to each or to the guardian of any who may be under the age of twenty-one years."

Article VII gave the rest and residue, including any lapsed legacies, to the testator's widow, outright and absolutely.

The testator's widow died December 4, 1931. His son, Donald, died March 16, 1967, and thus distribution of the remainder of the trust then became necessary. Donald's only children were Mrs. Birge and Donald, Jr., who, as already noted, had died in 1944. Donald, Jr., was survived by his widow, Charlotte K. Dunham (afterwards, by a subsequent marriage, Charlotte K. Cutrer) and three daughters, Mrs. Leslie Brook (Dunham) Rohan, Mrs. Donna Suzanne (Dunham) Jones and Mrs. Priscilla Leith (Dunham) Massengale. Donald, Jr., left a will making his wife sole beneficiary of his entire estate. She died April 2, 1964, leaving a will making her children sole beneficiaries of her entire estate.

It is agreed by all parties that Mrs. Birge, under Article VI, as one of Donald's two children, in any event and under any interpretation takes one-half of the remainder of the trust estate created under Article V.

Thus, the sole question is whether Mrs. Birge is entitled to the other half of the trust remainder or whether it vested in Donald, Jr., and, through the operation of his will and that of his wife, afterwards Mrs. Cutrer, would pass equally to her four children, three of whom were also the children of Donald, Jr.,

and one of whom (Jeffrey H. Cutrer) was her child by a subsequent marriage.

Mrs. Birge's claim to the entire trust remainder is based on the provision that, upon the death of the survivor of the testator's wife and his son, Donald, the trust estate was to "be divided . . . into as many shares as he, my son, may leave children including posthumous children if any, and one share shall vest in and shall be delivered by said trustee absolutely to each". Mrs. Birge claims that since Donald, Jr., predeceased his father, his father could not be considered as having died "leaving" Donald, Jr., as a child, since, as she claims, one cannot "leave" a child already dead, nor could the language "shall vest in and shall be delivered . . . to" apply to a child already dead. Thus, she claims that she alone qualified and that the estate of Donald, Jr., did not and could not qualify to share in the remainder interest in the trust. The case upon which she seems especially to rely is *Hartford National Bank & Trust Co.* v. *VonZiegesar,* 154 Conn. 352, 359, 225 A.2d 811, a case decided in December, 1966.

In further support of her claim, she points to the fact that in Article IV, in making express provision for his grandchildren, Sylvia and Donald, Jr., the testator conditioned the bequest of the principal to each on survival to the age of twenty-five and made no provision giving the parent's share to children (who would be great grandchildren of the testator) in the event that either grandchild died while in receipt of the trust income but before attaining the age of twenty-five.

Mrs. Cutrer's children join the administrator d.b.n., c.t.a. of Donald, Jr., in claiming that the other half of the trust remainder should be distributed to the estate of Donald, Jr. It is their claim that,

upon the death of the testator, the remainder interest in the trust, upon the termination of the life estates of Mrs. Dunham and of Donald, was given to Donald's children; that this was a class gift which embraced Sylvia and Donald, Jr., who each survived the testator, and which vested at the time of the testator's death; that had Donald had other children the class would have opened to admit them but that, since in fact he left no other children, Sylvia's and Donald, Jr.'s vested interests persisted, undiluted, up until the termination of both antecedent life estates upon the death of Donald in 1967.

In deciding between the foregoing two basic conflicting claims, that of Mrs. Birge, on the one hand, and that of the personal representative of the estate of Donald, Jr., on the other hand, certain fundamental principles must be kept in mind.

In the first place, we are concerned with the intent of the testator as expressed in the will as a whole, in the light of the circumstances surrounding him at the time the will was executed. *Connecticut Bank & Trust Co.* v. *Hills,* 157 Conn. 375, 379, 254 A.2d 453; *Connecticut Bank & Trust Co.* v. *Lyman,* 148 Conn. 273, 281, 170 A.2d 130.

It is obvious from a consideration of the will as a whole that the testator's concern was with his rather immediate family. The will contains no gift to any charitable organization. With the exception of relatively small bequests to three friends, to his brother, to his sister-in-law and to his daughter-in-law, each conditioned on the beneficiary surviving him, everything is given to the testator's wife, his children or his grandchildren. It is also clear from the provisions of Article IV that the testator was sufficiently interested in his grandchildren, Donald, Jr., and Sylvia, to create equal $20,000 trusts for

each. There is nothing in the will, considered as a whole, indicative of any intent to establish an inequality between Donald, Jr., and his sister, Sylvia. This is reinforced by the fact that Donald, Jr., was a newborn infant at the time the will was drawn and Sylvia was a little girl of five or six. There would be no reason for the testator's having any aversion to either child.

It is an accepted principle of construction that the law favors the early vesting of estates and that, unless the will discloses a contrary intention, an early vesting will be presumed to have been intended. *Hartford National Bank & Trust Co.* v. *VonZiegesar,* 154 Conn. 352, 358, 225 A.2d 811.

It is also an accepted principle of construction that, unless the will discloses a contrary intent, a gift to a class to be paid or distributed at a future time (here on the termination of the two life estates) takes effect immediately in point of right on the testator's death, if any member of the class is then alive, even though the possession and enjoyment is postponed until the termination of the antecedent life estates. Thus, the membership of the class would not be diminished by the death of a member prior to the termination of the antecedent life estates. *Smith* v. *Groton,* 147 Conn. 272, 275, 160 A.2d 262; *Trowbridge* v. *Townsend,* 112 Conn. 104, 111, 151 A. 345.

It follows that under both of the foregoing rules of construction, absent a contrary intent disclosed in the will, Donald, Jr., and his sister, Sylvia, would each take a vested interest in the trust remainder upon the death of the testator. But since these rules must yield to a contrary intention disclosed by the will, the ultimate disposition of this controversy depends upon whether the will discloses a contrary

intention, as claimed by Mrs. Birge on the grounds hereinbefore set forth. *Hartford National Bank & Trust Co.* v. *VonZiegesar,* supra, 359; *First New Haven National Bank* v. *First New Haven National Bank,* 153 Conn. 490, 496, 217 A.2d 710. Unless it does, the foregoing rules of construction would control.

If full effect is given to the literal and technical meaning of the language employed in Article VI, without consideration of the foregoing rules of construction or the will as a whole, Mrs. Birge might prevail since an expression of intention might be found which was inconsistent with the foregoing rules of construction. Such an expression of intention was found in *Hartford National Bank & Trust Co.* v. *VonZiegesar,* supra, on the basis of the wording of that particular inter vivos trust, considered as a whole, and the circumstances surrounding the settlor at the time the trust was established. It is important to note that, while the language used in the principal clause in controversy in the *VonZiegesar* case had some similarity to that used in Article VI of the Dunham will, the surrounding circumstances and the other portions of the VonZiegesar trust, upon all of which the decision was based, differed widely from those in the instant case.

Indeed, in the construction of a will or trust, precedents are usually inconclusive, since the same or substantially similar expressions seldom occur in different wills or trust agreements. And precedents are entitled to little weight where they do not involve precisely analogous language used by testators or settlors who are surrounded by like circumstances at the execution of the will or trust agreement. In each case, it is the intention expressed by the particular language employed which must

be construed. *Connecticut Bank & Trust Co.* v. *Lyman,* 148 Conn. 273, 281, 170 A.2d 130.

Although it does not appear in the stipulated facts that the draftsman of the will was an attorney, the wording of the will clearly indicates that he was. As such, he may be assumed to have been familiar with accepted rules of construction as of the time the will was drawn, which was in 1915. While the cases heretofore cited were decided after the will was drawn, they merely reiterated and applied rules of construction which were well known and settled long before 1915. Indeed the will construed in *Trowbridge* v. *Townsend,* 112 Conn. 104, 105, 151 A. 345, had been executed in 1864. The presumption as to early vesting and its application to a class gift were recognized and followed in *Norton* v. *Mortensen,* 88 Conn. 28, 30, 89 A. 882 (decided in March of 1914, a few months before the Dunham will was drafted), and in earlier cases therein cited. The draftsman of the Dunham will, in the absence of any showing to the contrary, must be considered to have been familiar with both of the foregoing then-settled rules of construction, to have had them in mind when he drew the will, and to have realized that a clear expression of intention was essential to overcome both of these settled rules. It would have been a relatively simple matter, if the testator's intention was actually contrary to the result reached under the foregoing rules of construction, for the draftsman to have made that intention clear in the will. Thus, he could easily have added some such phrase as "him surviving" or "living at his death" after the words "may leave children", as was done, for instance, in the VonZiegesar trust. See *Hartford National Bank & Trust Co.* v. *VonZiegesar,* 154 Conn. 352, 355, n.1, ¶¶ 3, 4, 225 A.2d 811. Yet he con-

tented himself with the quoted provision. This is in sharp contrast to the precise language employed in Article III, where survivorship was clearly made a condition precedent to the taking by the beneficiary, although only in the case of the bequest to the testator's brother was there any real need for the provision in the light of General Statutes § 45-176.

But we think the most important and the decisive factor is the presence of the class gift and the incidents flowing therefrom. The class gift could not be divided into shares or delivered to the beneficiaries until Donald himself had died, since prior to his death it could not be determined with certainty that he would not have more children, especially in the light of the express inclusion of a posthumous child. Thus, the use of the future tense in "shall be divided" and "shall be delivered" was a proper, if not the only proper, tense to be used in the case of a class gift even though it had vested in Sylvia and Donald, Jr., upon the death of the testator.

The phrase "shall vest", literally construed, on its face seems to support Mrs. Birge's claim. But again we must remember that this is a class gift, and, if a child, even a posthumous child, was born to Donald, it would add to the members of the class and thereby diminish the amount passing to the other members of the class. To that extent it would interfere with, and reduce, the vested interests of all of the other members of the class. Only when the possibility of Donald's having other children had ceased could the remainder vest in the absolute sense that the respective shares of the members of the class became either fixed or ascertainable. It should be noted that this situation would not arise if a remainder interest were vested in multiple remainder-

men who were not members of a class which, as here, was subject to opening to admit additional members. We think the situation obtaining in this case was described with substantial, even if not technical, accuracy in the use of the phrase "shall vest". Certainly the vesting in the members of the class was a type of vesting which, until Donald's death, did not become, practically speaking, a completely vested remainder in the ordinary sense of the word "vest".

Similar considerations apply to the use of the phrase "may leave children". Division of the remainder was impossible until the number of children had been ascertained, since the membership of the class could not be determined at a prior date. Thus, the "may leave" phrase was a permissible one to use in 1915 in describing the events which did not come to a final culmination until some fifty years later. Under the circumstances, the phrase "may leave" children does not, in the light of the foregoing rules of construction, exclude a predeceased child who had become a member of the class. Rather, it must be construed as referring to children of Donald who, prior to his death, had become members of the class and would remain so regardless of whether they survived the two antecedent life beneficiaries.

*Hartford National Bank & Trust Co.* v. *VonZiegesar,* 154 Conn. 354, 225 A.2d 811, does not hold (p. 359), as Mrs. Birge seems to claim, that as a matter of law one cannot "leave" a child already dead. Indeed in that case (p. 355 n.1, ¶¶ 3, 4) it is significant that the settlor did not rely on any such theory. Rather, he used the phrase "leaving no child or children living" which is vitally different from the language used here.

Whatever we might hold if Article VI stood alone and if the remaindermen were not members of a

class subject to opening to admit new members, in the light of the will as a whole, and of the foregoing rules of construction, we cannot hold that the will adequately expresses an intent contrary to those rules.

This determination leads to the conclusion that Donald, Jr., at the death of the testator, took an equal vested interest with his sister, Sylvia, as a class gift, in the remainder of the trust and that this interest was not divested by his death although it would have been diluted had there been additions to the membership of the class.

To the question propounded in the reservation we answer that the remainder interest in the trust created under Articles V and VI of the will of Sylvester C. Dunham should be distributed, one-half to Sylvia D. Birge and one-half to the estate of Donald A. Dunham, Jr.

In this opinion the other judges concurred.