363 Mass. 454 (1973)
295 N.E.2d 388
NEW ENGLAND MERCHANTS NATIONAL BANK OF BOSTON & another, trustees
vs.
JEANNE O. KOUFMAN & others.
Supreme Judicial Court of Massachusetts, Norfolk.
March 5, 1973.
April 10, 1973.
Present: TAURO, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.
Raya S. Dreben stated the case.
Richard D. Leggat (James S. Davis with him) for Children's Cancer Research Foundation, Inc.
John J. Roche for James A. Koufman.
Jonathan Davis for Beverly Tuttle.
Reuben Landau, for Jeanne O. Koufman, was present but did not argue.
REARDON, J.
This is an appeal from a decree of a judge of the Probate Court for Norfolk County upon the trustees' petition for instructions.
Louis S. Koufman (the decedent) died on August 2, 1965. He was survived by his widow, Jeanne O. Kaufman, four children by a prior marriage, and a grandson James Koufman, the son of the decedent's deceased son Joseph. Louis Koufman had been successful in the construction business and eventually, as a real estate developer. At the time he made his will his widow had no independent means of her own and looked to him for essentially her entire support. Article Third of his will left his residence to Jeanne for two years, directing that by that time it should be sold and she would receive one-third of the proceeds. Article Second, which presents the issue in this case, provides as follows:
"SECOND: All right, title, and interest which I may own at the time of my death in any real estate wherever located, except the real estate at 161 Cabot Street, Brookline, Massachusetts, subject, however, to any mortgage or mortgages, or other encumbrances, or any lien or liens, which may exist thereon at the time of my death, in fee simple absolute to the TRUSTEE under this my Will, In TRUST NEVERTHELESS, for the following trust purposes and to be known as `Trust B'; and also to the co-trustee;

*456 "(a) To pay to or apply for the benefit of my wife, JEANNE O. KAUFMAN, as long as she shall live, the net income in monthly installments up to ten thousand dollars ($10,000.00) for each twelve month period.
"(b) To pay the net income in excess of ten thousand dollars ($10,000.00) if any, for the rest of such period of twelve months by equal monthly installments in equal shares during the period of the following twelve months to BEVERLY TUTTLE and my grandson, JAMES A. KOUFMAN, or to apply the same for their benefit in the same manner, or to the survivor of them.
"(c) Upon the death of my said wife, Jeanne O. Koufman, to pay and transfer the principal of this trust to the CHILDREN'S CANCER RESEARCH FOUNDATION commonly known as `Jimmy Fund' and located in Boston, Massachusetts, for its unrestricted use consistent with its charitable purposes."
The assets of "Trust B" consist solely of interests in two parcels of real estate: a 100% interest in a parcel located at 220 Boylston Street, Newton (the Newton property), and a one-half interest in a parcel located at 957 Commonwealth Avenue, Boston (the Boston property). Both properties were at the time of the decedent's death, and still are, encumbered with mortgages. At the time of the decedent's death the values, mortgage balances, and equities relating to the two parcels were as follows:

 Value Mortgage Balance Equity
 Newton property $730,000 $486,279.29 $243,729.71
 Boston property
 (one-half interest) $65,000 $ 60,884.72 $ 4,115.27
 ___________ ___________
 $547,164.01 $247,844.98

Since the decedent's death, the principal balances of *457 the two mortgages have been reduced from $547,164.01 to $463,494.88, after July, 1971, payments. It is agreed that if either parcel were sold now it probably could be sold for a price in excess of the value assigned as of the date of the decedent's death.
Since "Trust B" was established the trustees have not had the availability of any principal cash and they have not allocated expenses between principal and income. All of such expenses, including payments on the principal of the mortgage, have been paid from current rent receipts. On February 17, 1970, the New England Merchants National Bank of Boston and Jeanne O. Koufman, trustees, filed a petition for instructions on the proper method of computing "net income," alleging that the income beneficiaries contended that amortization payments on the mortgage are to be charged against principal and that no depreciation reserve is to be charged against income, while the remainder beneficiary asserted that amortization payments should be charged against income. After hearing and consideration, a judge of the Probate Court decreed that the primary objects of the decedent's donative intent in setting up "Trust B" were the income beneficiaries, and that the gift to the remainderman of the equity in the real estate at the time of the decedent's death, to the extent that the remainderman does not elect to satisfy any mortgage or mortgages, is subject to the prior rights of the income beneficiaries to the net income. The judge ordered the trustees not to charge the income of the trust with principal payments on the mortgages, to charge principal payments already made against the trust res, and not to make a charge for a depreciation reserve against income. The judge also ordered that if the cash flow was insufficient to enable distribution of net income in full then the undistributed net income is to be distributed to the beneficiaries as soon as funds become available, and any undistributed net income is to be charged against the corpus in favor of the respective income beneficiaries, together with four per cent interest payable to them from the date on which the *458 distribution[1] should have been made. The decree authorized the trustees to borrow money on the trust res to effectuate the decedent's intent to provide for the income beneficiaries. The judge ordered that the trustees' fees be apportioned between income and principal, and that all attorneys' fees be charged against the corpus of the trust.
The remainder beneficiary, Children's Cancer Research Foundation, Inc., has appealed from this decree.
An appeal from a decree of the Probate Court is governed by equity practice, G.L.c. 215, § 9, as amended, and, as with equity cases, an appeal opens all questions of fact, law and discretion. Colbert v. Hennessey, 351 Mass. 131, 134. A full report of the evidence, including exhibits and the transcript of the Probate Court hearing, is before us. The judge did not make findings of material facts, but to the extent that his decree necessarily implies findings of fact which rest wholly or partly upon oral testimony those findings will not be set aside unless plainly wrong. Berry v. Kyes, 304 Mass. 56, 57-58.
1. We deal first with the question whether amortization of mortgage principal should be charged against the corpus or the income of the trust. "The fundamental rule for the construction of wills is to ascertain the intention of the testator from the whole instrument, attributing due weight to all its language, considered in the light of the circumstances known to him at the time of its execution, and to give effect to that intent unless some positive rule of law forbids." Hill v. Aldrich, 326 Mass. 630, 632. Fitts v. Powell, 307 Mass. 449, 454.
The appellant argues that since "Trust B" has, from its inception, contained no principal cash the decedent must have meant net income to mean "cash flow," the income available after charging principal expense thereto; otherwise practical problems arise because there is no *459 principal cash with which to amortize the mortgage. The appellant amasses a great weight of authority for the proposition that this court should interpret the words used by a decedent in the light of the instrument as a whole and other pertinent evidence. However, viewing the instrument as a whole and considering other pertinent evidence, the appellant's attempt to demonstrate that "net income" means "cash flow" remains speculative and unpersuasive. The appellant advances various linguistic arguments  that the positioning of "subject ... to any mortgage" in the language of Article Second indicates that beneficial interests, both income and principal, are only to be determined after the satisfaction of mortgage payments, and that "if any" precludes the possibility that the decedent contemplated James and Beverly receiving a larger share than his widow Jeanne  which are hardly conclusive. The appellant's strongest argument is that if principal payments are not charged against income, since there are no cash funds in the corpus, and since it might, for various reasons, be difficult for the trustees to raise cash on security of these properties, the trust created by the decedent, a shrewd real estate investor, would be unworkable. To avoid this conclusion, it is argued that from a practical standpoint the most satisfactory interpretation of "net income" is income available after charging both principal and interest expense thereto.
However, neither the will itself nor any of the extrinsic evidence indicates that the real estate in question was supposed to be preserved as it was at the death of the decedent. Furthermore, the appellant's argument ignores the significance of Article Eighth of the decedent's will, which authorizes the trustees not only to mortgage any property but also to "sell, exchange, give options upon, partition or otherwise dispose of any property."
We believe that "net income" should be interpreted to mean what it is usually held to mean in the law of trusts. There is considerable authority for the proposition that payments of mortgage principal are charged against the *460 corpus. Restatement 2d: Trusts, § 233, comments e, f. Scott, Trusts (3d ed.) § 233.2. Bogert, Trusts and Trustees (2d ed.) §§ 603, 808.
Furthermore, as the appellees point out, when this court has listed charges to be made against gross income, such charges have not included payments of mortgage principal. Bridge v. Bridge, 146 Mass. 373. Ogden v. Allen, 225 Mass. 595. Parkhurst v. Ginn, 228 Mass. 159, 170.
The appellant characterizes the application of this rule in this case as narrow adherence to rigid precedent, and argues that we should feel free to seek out the meaning of "net income" in the particular circumstances at hand. However, the value of this rule is not simply precedential; its compelling justification is that charging principal amortization to income essentially shifts the beneficial interest to the remainderman from income beneficiaries, presumably in alteration of the balance envisioned by the decedent. This rationale would seem to have particular force in this case where the probate judge found that the primary objects of the testator's donative intent in setting up the trust under Article Second of the will were the income beneficiaries.
Since the appellant's arguments on the degree of generosity which the decedent intended towards the various beneficiaries seem speculative at best,[2] and since a fair reading of the will is insufficient to demonstrate that the decedent intended a different result, the usual rule that amortization of principal should be charged against corpus should govern and the decree on this phase of the case upheld.
2. The appellant contends that, in the event that this court decides that payments and amortization of mortgage note principal balances should not be charged against income prior to determining distributable net *461 income, the trustees should be directed to establish appropriate reserves for depreciation of the real property, which reserves should be established as of the date of death of the decedent and should be charged against the gross income of the trust. The appellant argues that because of the "realities governing investments in real estate," if one assumes that the creator of a trust, providing for successive beneficial interests in trust property and silent on specific instructions to the trustee, intends that the successor beneficiary shall have the same economic value available to it that was available at the time the trust was created, some provision must be made to avoid diminution in value by means of depreciation in value. However, the weight of authority, both in this State and elsewhere, is contrary. Despite the intuitive appeal of the appellant's argument, it is not clear that as a matter of policy such a rule would be wise. In these circumstances we are reluctant to make abrupt departure from a settled rule of construction.
In Nelligan v. Long, 320 Mass. 439, the trustees under a will received real estate occupied by a corporation carrying on a quarrying and stone crushing business with a direction "to carry on the ... business ... so long as the same shows a reasonable amount of profit on the investment." The court held that the trustees correctly paid all the income to the income beneficiaries, without setting aside from such income a depletion reserve for the benefit of remainder beneficiaries. The court reasoned that in light of the specific directive to continue the business, the business should not be considered a wasting asset and therefore the trustees were under no obligation to convert it, and further indicated that the specific directive to retain the business imported a preference for the income beneficiaries.
While the Nelligan case might be distinguished on the basis of the specific directive to retain the property (here, under Article Eighth, the trustees are clearly authorized to dispose of the property), it is not a generally accepted practice in trust accounting to establish a depreciation *462 reserve when the trust res consists of productive commercial realty. Scott, Trusts (3d ed.) § 239.4. Bogert, Trusts and Trustees (2d ed.) § 829. While it might be well to allow a trustee to set up a depreciation reserve where he acted under specific language in a will either directing him to do so, or at least arguably giving him discretion to do so, to require a trustee to set up such a reserve in the absence of even suggestive language in the will would be an abrupt and unsettling change in the law, perhaps more appropriately accomplished by legislative action. This case in particular would seem a poor vehicle for such a change. There is no language whatsoever in the will authorizing the creation of a depreciation reserve, and no evidence was introduced of physical depreciation.
The appellant points to the decedent's successive income tax deductions, while alive, taken for depreciation, but these seem of questionable relevance in a determination of the trustees' fiduciary responsibilities.
None of the cases cited by the appellant squarely supports the adoption of a rule requiring the trustees to set up a depreciation reserve out of income for property originally part of the trust, in the absence of specific instructions to do so in the trust language itself. And the chief commentary relied on by the appellant, while favoring some liberalization in the court's attitudes toward depreciation reserves, still recognizes that, in fact, appreciating values may offset remaindermen's losses, and that in any case at least the present rule is certain, so that lawyers, by using unequivocal language, can always reach the desired result. Note, 60 Harv. L. Rev. 952, 955-956.
3. The Probate Court decree directed that all attorneys' fees and expenses be charged against the corpus of the trust. General Laws c. 215, § 39B, inserted by St. 1951, c. 312, explicitly provides that that court "may, in its discretion as justice and equity may require, provide that such sums as said court may deem reasonable be paid out of the estate in the hands of such fiduciary to any party to the proceeding on account of counsel fees *463 and other expenses incurred by him in connection therewith" (emphasis supplied). The expenses of litigation are extraordinary expenses traditionally charged to the principal of a trust. Scott, Trusts (3d ed.) § 233.3.
4. General Laws c. 206, § 16, as appearing in St. 1949, c. 140, provides that trustee fees "may be apportioned between principal and income as the court may determine," and there is no error in the decree that the trustees' fees "shall be reasonably apportioned between income and principal."
Decree affirmed.
NOTES
[1] However, the decree also provided that if the accrued interest charges would reduce the corpus below the value of the equity at the time of the decedent's death, then they should be abated so as to preserve that value.
[2] The appellant contends that under the probate decree Beverly Tuttle and James Koufman may eventually each receive more than the $10,000 going to Jeanne Koufman. However, there is nothing in the language of the will to rule out such a result.