Marlene Cohen **DATTEL**,
Plaintiff/Appellant,

v.

Brenda Dattel **BREKHER**, et al.,
Defendants/Appellees.

Supreme Court of Tennessee,
at Jackson.

April 11, 1988.

John T. Wilkinson, Jr., Memphis, for plaintiff/appellant.

Charles W. Burson, Wildman, Harrold, Allen, Dixon & McDonnell, Memphis, for defendants/appellees.

## OPINION

HARBISON, Chief Justice.

This case involves the interpretation and administration of an *inter vivos* trust created in connection with the settlement of a divorce case and approved by the judge of the divorce court.

Numerous issues in connection with the administration of the trust, such as the payment of counsel fees and other expenses, were presented to the trial judge and the Court of Appeals. Review in this Court was limited to a single issue, as to which we reverse the decision of the Court of Appeals. With that modification we remand the case to the trial court for further proceedings.

The trust came into existence after the plaintiff, Marlene Cohen Dattel, was awarded a divorce from Samuel Dattel, an attorney with wide experience in the construction and real estate business. Initially, in addition to disposing of other issues, the divorce court awarded Mrs. Dattel alimony *in solido* in the amount of $379,439. To satisfy that award the trial court divest-

ed certain real property interests out of her former husband and vested them in her. Upon petition to rehear, another decree was entered, substituting other real property interests of the husband in order to satisfy the alimony *in solido* obligation.

On August 21, 1970, a consent decree was approved by the trial court, divesting Mrs. Dattel of all of these property interests and vesting them in certain trustees pursuant to the terms and provisions of a written trust indenture exhibited to the decree.

The properties conveyed to the trustees to satisfy Mr. Dattel's alimony obligation consisted of a one-half interest in several apartment complexes, with about 259 rental units. Mr. Dattel's equity in these properties was valued at about $380,000. The market value of his one-half interest in these properties when the trust was created was in excess of one million dollars, but this included outstanding mortgage balances.

The trust indenture named Mrs. Dattel as the primary beneficiary and directed that the entire net income should be distributed to her monthly. The trustees were also given power to invade the corpus "for emergency purposes to provide for the health and maintenance of the Primary Beneficiary". Provisions were made for the distribution of corpus upon her death, the remaindermen being the four children of the parties. All of the remaindermen are now adults, although some were minors at the commencement of this protracted litigation.

The provisions of the trust indenture must be considered in light of the fact that the trust was created in lieu of the original fee simple award of the corpus to Mrs. Dattel and that this award was made to her in satisfaction of an alimony *in solido* obligation. Had it not been for the creation of the trust, Mrs. Dattel would have owned the properties in fee simple. She would have been entitled to all of the income therefrom and, of course, would have been obligated to maintain them and to pay the mortgages on them.

Under the trust provisions she was given the entire net income, but the trustees were directed first to pay "all the necessary costs, fees and expenses incident to the management and maintenance" of the trust. They were to determine and compute the net income monthly and were given broad discretion in the allocation of receipts to income or to corpus. They were also given discretion to retain the original corpus or to sell, exchange or encumber any assets held in the trust and to reinvest proceeds from the sales. In addition, they were granted the rights, powers, duties, privileges and immunities contained in statutes now codified as T.C.A. § 35–50–110. The trust instrument made no reference to the Uniform Principal and Income Act, T.C.A. §§ 35–6–101 to 115, although that statute had been enacted several years prior to the creation of the trust. None of the statutory provisions is dispositive of the issues involved in this appeal.

The properties which comprised the corpus had previously been owned by Mr. Dattel and a partner in equal shares. Out of the income from the properties they had made regular payments of both principal and interest on the outstanding mortgages, and they had also paid out of income all costs of maintenance, repairs, taxes, and other related items of expense.

After the trust came into existence, Mr. Dattel's former partner continued to operate the properties and to pay all of the foregoing items out of income. He then distributed the net to the trustees who paid it to Mrs. Dattel monthly. Mr. Dattel and his partner had never set up a funded reserve for depreciation of the property, and the trustees did not do so. The trustees never attempted to charge to corpus any payments on principal of the outstanding mortgages or any other costs or expenses related to operation of the numerous rental units comprising most of the corpus.

Shortly after the trust was created, the trustees undertook to sell the properties constituting the corpus to Mr. Dattel at a private sale. This sale was later set aside as improvident, and the properties were

retained as corpus. The divorce court retained supervisory jurisdiction over the trust and required that the trustees administer it in accordance with court orders. Its decision was affirmed by an opinion of the Court of Appeals rendered on February 12, 1973.

Later in 1973, Mrs. Dattel filed a petition for an accounting, and the issues have been in litigation continuously, although sporadically, since that time.

■ Originally, under an order of reference, a special master concluded that the trustees should have charged payments of mortgage principal to corpus. He required the trustees to execute a note for the amounts allocable to corpus. The referee later reversed his decision and ruled to the contrary. The trial judge, ruling upon exceptions, reversed the action of the master and directed that such a note be executed by the trustees for all mortgage principal payments. In the present appeal, the Court of Appeals reversed the action of the trial judge and held that the payments on principal were properly charged to rental income under the unique circumstances of the case.

In denying review of that issue, we concluded that the action of the Court of Appeals was correct. As pointed out by that court, and as recognized by the trial judge, payments of principal are frequently charged to corpus, rather than to income, in the absence of a contrary direction by the settlor of the trust. *See New England Merchants National Bank of Boston v. Koufman*, 363 Mass. 454, 295 N.E.2d 388, 391 (1973), and authorities cited therein.

In the present case the trustees were given discretion as to the allocation of receipts to income or corpus. They had almost no other assets out of which to make the principal mortgage payments, and the settlor had regularly paid them out of income before the trust was created. There is no reason to suppose that Mrs. Dattel would have done otherwise, had she seen fit to retain the properties originally awarded to her and later placed in trust. There

is no issue in the present case of improper retention of the corpus assets by the trustees.

Under the unusual facts of this case, therefore, we are of the opinion that the trustees did not abuse their discretion and that the trust corpus should not be charged with payments of mortgage principal. The trustees properly paid the principal as well as current interest out of income. Under the circumstances shown here, nothing in the Uniform Principal and Income Act requires that the corpus be charged with principal payments.

■ The Court of Appeals went further, however, and held that the trustees were required to create out of income an additional funded reserve for depreciation. No such funded reserve, or sinking fund, had ever been created by the settlor; and nothing in the trust instrument requires it. Mrs. Dattel is to receive all of the net income from the trust; and she is, without question, the primary beneficiary of the trust, whether so intended by Mr. Dattel or not. It will be recalled that had she not agreed to place these properties in trust, she would have owned them outright. In our opinion, the children must be regarded as secondary beneficiaries although, of course, the trustees are not free to disregard any express provisions of the trust indenture.

Since the indenture did not provide for the creation of a reserve for depreciation and since the trustees were given very broad discretion in allocating items of income and corpus, in our opinion the trustees were justified in not creating a funded reserve for depreciation out of income. It must be recalled that they had already charged income with the actual purchase price of the assets comprising the corpus, except for such equity as Mr. Dattel had in them at the time he transferred the corpus to the trustees. Generally where the purchase price of assets is charged to corpus, a funded reserve for depreciation and replacement out of income may be appropriate.[1] Even in such cases, however, the

---

**1.** *See In re Warner's Trust*, 263 Minn. 449, 117    N.W.2d 224 (1962) and authorities cited therein;

terms of the trust instrument and the intentions of the parties must be given consideration. In the present case, where the corpus was bearing no part of the cost of the assets producing income, in our opinion the trustees had discretion not to create a reserve for depreciation out of the income stream. Different facts and circumstances, of course, could easily require a different result. Under the circumstances of this case, however, we are of the opinion that the Court of Appeals was in error in holding that the trustees had improperly failed to create a reserve for depreciation and in requiring that such a reserve be established and funded retroactively from the inception of the trust.

The record is clear that all costs of maintenance and repairs have been charged to income in the past and are regularly being so charged by the trustees. At the time of the last hearing in this case in the trial court in 1984, more than one-half million dollars had already been charged against income for payment of principal on the outstanding mortgages. A substantial amount remains to be paid unless the properties are sold. The market value of the properties had increased dramatically between the date of the creation of the trust and the 1984 hearing. The trial judge, in our opinion, properly rejected the insistence of the remaindermen that a reserve for depreciation be retroactively funded from income.

The administration of this trust is to be supervised closely by the divorce court. If the trustees should reinvest in other depreciable assets, that court at the proper time can direct the trustees with respect to investment of corpus, payments therefrom, and reserves for depreciation. On the present record, however, and with respect to the properties held in the trust in 1984, and especially in light of the fact that the trustees have exercised their discretion from the beginning to charge mortgage principal to income, we are of the opinion that the Court of Appeals erred in requiring a further charge against income for a reserve for depreciation.

*see also* T.C.A. § 35–6–113(d).

We limited our review in this case to the depreciation reserve question. The other issues raised in the briefs of the parties are incidental matters having to do with costs and expenses of the administration of the trust. The decree of the Court of Appeals with respect to each of them is approved. The cause is remanded to the trial court for further proceedings consistent herewith. Costs incident to the appeal will be paid out of the trust estate, one-half being charged to income and one-half to principal. All other costs will be fixed by the trial court.

After this case had been argued and submitted to the Court, counsel for appellees filed a motion to dismiss upon the ground that the application for permission to appeal had not been timely filed. After examination of the record and the terms of the order granting an extension to appellant, we are of the opinion that this motion is not well taken, and it is accordingly overruled.

DROWOTA and O'BRIEN, JJ., and LaFON, Special Justice, concur.

COOPER, J., dissenting. See separate opinion.

COOPER, Justice, dissenting.

I respectfully dissent from the holding of the majority of the Court that the application for permission to appeal was timely filed, and the concomitant result that this Court has jurisdiction to consider the appeal in this cause. I would hold that the application for permission to appeal was filed after the expiration of time allowed by Rule 11(b) of the Tennessee Rules of Appellate Procedure and the order of this Court, and that this Court is without jurisdiction to grant the application and decide the merits of the appeal.