[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution brought by the plaintiff wife against the defendant husband. The parties were married in New Britain, Connecticut on September 16, 1972. They have both resided continuously in the state of Connecticut for at least one year next before the date of the institution of this action. There are three minor children issue of this marriage, to wit: Stefan Shreiver Lanfer born February 25, 1975, Peter Thacher Lanfer born September 29, 1976 and Nathaniel CT Page 2336 Denison Lanfer born November 16th, 1979. There are no other minor children issue of this marriage.
Neither the plaintiff nor the defendant is now nor have they in the past received any assistance from the Connecticut Department of Human Resources.
The marriage has broken down irretrievably with no hope of reconciliation. While the defendant, in his claims for relief, states that the plaintiff is the cause of the breakdown of the marriage, the testimony of the defendant was that the plaintiff was a good mother and supportive of him and it was lack of compatibility which he thought was the cause of the divorce. The plaintiff cited a lack of emotional support from her husband and his preoccupation with sports, particularly playing tennis five to six nights a week. In fact, she said this was a relationship which did not work for a marriage of some 18 years.
The parties separated in September of 1989 when, after a short period when the defendant left the home, he returned and the plaintiff then rented a condominium. She testified she would sleep at the condominium but returned to the house every day to care for the children.
Complicating the marital situation was the presence of the plaintiff's mother who came to live with them in 1979. At that time she loaned them $60,000.00 which they needed to buy the house and to which all three of them moved along with the children at Three Gregory Road in Cos Cob. The parties agreed on the arrangement to have the plaintiff's mother live with them. While the plaintiff's mother contributed services such as baby sitting, her presence may also have contributed to the tension in the home.
In 1985 the Gregory Road house was sold and the money received from that was placed by the defendant in a trust called the Alpine Trust. The parties then moved into the defendant's mother's home which they rented. This home is actually owned by a trust in which the defendant has a third beneficial residual interest along with his two sisters. His mother is the income beneficiary of the trust. The defendant valued this trust for purposes of obtaining a loan from People's Bank in 1989 at $550,000.00. (See exhibit D.)
For one year after the plaintiff had left the home, plaintiff's mother continued to live in the home which the defendant was occupying. However, during the summer of 1990, the defendant, without notifying her, advertised the house for rent so that he could go on a bicycle trip of six weeks with his CT Page 2337 oldest son. The plaintiff's mother then moved out of what is known as the Binney Lane house and moved in with the plaintiff who had since rented a three bedroom house so that she could have her mother and her youngest son live with her.
There is no dispute with respect to custody since both parties have agreed that the youngest son shall be in the physical custody of the plaintiff and the two older boys shall be in the physical custody of the defendant and that both parties shall have joint custody of all three children with visitation also agreed upon as will be set forth in the court's orders.
The major problem is, of course, the distribution of assets and the determination of alimony and support. The defendant gave one financial picture to the People's Bank in exhibit D in 1989, around the time that the parties separated, when he was seeking to buy a $3,000,000.00 building and finance it in part by a $300,000.00 loan from the bank. He obtained the loan by mortgaging the house in which he was living which belonged to the trust known as the SPL Trust. To do that, he had to obtain the consent of his two sisters and his mother, which he was able to do. It should be noted that the defendant is not only the beneficiary of the trust but also the manager and trustee of the trust. In addition to his trust interest, he also has another trust called the Alpine Trust part of which is in his wife's name but which he conducted as if it were his alone and which he values at $179,000.00 in his financial affidavit. He also has 62 shares of New England Dairy, 34 of which he states are in trust and 83 and a half shares of Protein Corporation. The total value of both sets of shares he declares to be $89,600.00.
There are also Keoghs and IRAs in the amount of $65,376.00, again, according to his affidavit. While the defendant lists expenses of some $2,546.87 which is more than his stated weekly income of $2,307.69, he includes in his expenses offices and business expenses while, at the same time, stating that his "net weekly income" is $2,307.69.
While the defendant claims not to be able to pay the rent or taxes or even the alimony and support order against him without obtaining the income from the Alpine Fund, it is noteworthy that he was able to buy a $3,000,000.00 building called the Fike Dairy and, at that time, stated his net worth to be over $2,000,000.00. (Exhibit D.) Moreover, he lives in the house owned by the trust which has an apartment over the driveway for which a tenant pays $1,400.00 a month rent. He claims he cannot pay the rent due the trust of some $34,000.00 a year although the tenant is paying almost half of it. In CT Page 2338 addition, since he is one of the beneficial remaindermen of the trust, he is in effect paying the rent to himself in part. Further, since he manages the trust and has already been able to obtain a $300,000.00 loan from the bank using the house as security, it would seem that this asset is available to him to meet his needs. His other assets also could have been used except for the Alpine Trust which the court ordered him not to use to pay some of his obligations, particularly the rent and the taxes.
In addition, at the present time he has not paid his wife's taxes which he was ordered to pay by Judge Ryan of some $4,000.00. She has advanced that money in order to keep from having penalties assessed against her.
The defendant's occupation is that of a financial consultant, and the evidence disclosed a number of tax forms, 1099's, indicating some of the sources of his income, see exhibit H, 1 through 10, which total $87,531.41. In addition, he had received income from the Alpine Fund and the New England Dairy in 1989. While he now claims not to have received any in 1990, these are still his assets. He apparently attempted to insure his assets against his wife's obtaining them by hypothecating the stock in New England Dairy with the Robo Bank as security for a loan, presumably for the purchase of the Fike Dairy.
Moreover, the evidence did establish that the defendant spent his money on sports and vacations and, in fact, in this past year in which he claims his income has been reduced, he took a six week bicycle tour with his son in addition to other ski weekends.
The plaintiff, on the other hand, has been working 20 hours a week at $13.00 an hour at the Pace Marketing System. She graduated from Trinity in 1971, a little over a year before she married the defendant. The plaintiff worked only before the birth of the first child and did not work until the separation except for giving occasional voice lessons. However, she did run the house and take care of the children. The defendant described her as supportive of him and a good mother. The defendant, on the other hand, was the chief breadwinner and provided all of the funds needed for the family except for the funds provided by the plaintiff's mother. For two years, for example, the plaintiff's mother was their chief support because there was no income from the defendant during that period. In addition, as has been pointed out, the plaintiff's mother loaned them $60,000.00 which enabled them to buy the Gregory Street house which later sold for $275,000.00, a part of which formed the basis for the Alpine Trust. Consequently, the court finds CT Page 2339 that the contribution of each was equal.
The ability of each to obtain future assets may be different. The plaintiff, with her college education and her present experience in marketing, may well be able to increase her income, certainly to the $25,000.00 level, but whether she can go much higher is questionable. She is renting a house with the help of her mother.
The defendant, on the other hand, has a substantial interest in the SPL Trust and in the Fike Dairies and in the Protein Company. He has valued his net worth at over $2,000,000.00 as of 1989. While that may have declined somewhat and will decline because of this judgment, he is still in substantially better financial position as far as his assets are concerned than the plaintiff.
The plaintiff appears to be in good health and she does state that she wishes to work full time once this divorce is finalized.
She has claimed in her testimony that the parties always, in effect, were living beyond their means and that the defendant maintained a negative balance in the checking account which required them to pay a large finance charge.
It does look from the defendant's testimony that, as a financial planner, he has been able to maintain a rather affluent living style while at the same time claiming to have no money for ongoing expenses like rent and taxes.
The defendant has both an AB and an MBA degree and has also studied abroad. Given his background in finance, it would appear that he has deliberately manipulated his assets through hypothecating securities for loans to buy the Fyke Dairy from which he does receive an income of some $4,166.00 per month.
In addition, his interest in the SPL Trust must be considered by the court since it vested at the time of the settler-grantor's death in 1970. (See Hartford National Bank and Trust Company, Trustee v. Birge, 159 Conn. 35, 266 A.2d 373,376 (1970). The defendant valued this trust at $500,000.00. He has a one third residual interest in it, and his testimony indicated that there were no withdrawals from the trust for the benefit of the income beneficiary, his mother. Consequently, it would appear that the funds in the trust have been steadily increasing since 1970 when the original sum for the principal was $50,000.00. While the plaintiff makes no claim for this trust interest, she does claim that the defendant's interest in it should be considered in evaluating his assets in relation to CT Page 2340 her in distributing the assets between them, and the court is doing just that.
Both parties appear to be in good health. The plaintiff is 42 years of age and the defendant is 46 years of age.
The parties have agreed on joint custody of the children with physical custody of the two older boys with the father and of the younger boy with the mother. They have also agreed on the visitation. All of this will be incorporated in the following orders because the court finds that that agreement is in the best interests of the children.
Having considered all of the elements set forth in46b-82 of the General Statutes, the court makes the following findings and orders:
 1. The parties were married in New Britain, Connecticut, in September, 1972.
 2. There are three minor children issue of this marriage, Stefan born February 25, 1975, Peter born September 29, 1976, and Nathaniel born November 16, 1979.
 3. The marriage has broken down irretrievably with no hope of reconciliation, and it is hereby dissolved.
 4. The reason for the breakup appears to be incompatibility and, therefore, no fault can be assessed to either side.
 5. In accordance with the agreement of the parties, joint custody of all three children is awarded to both parties. Joint custody means joint decision-making on all major issues affecting the children including but not limited to education, health, religion and sports activities with the primary physical residence of Stefan and Peter with the defendant and the primary physical residence of Nathaniel with the plaintiff.
 6. The parties have also agreed on the following visitation schedule and the court orders it as follows:
 a. The defendant will have visitation with Nathaniel weekends from Friday at 5:00 p. m. to Sunday at 5:00 p. m. except that Sunday is to be extended for up to five weekends per year when the father and son are skiing.
b. The plaintiff shall have visitation with Peter and CT Page 2341 Stefan every Sunday from 5:00 p. m. to 9:00 p. m. except for five weekends when they will be skiing and at other times at the option of Peter and Stefan.
 c. Holidays and vacations, the parties will have the children for alternate Thanksgivings beginning with the wife for 1990; the plaintiff shall have the children for Christmas Eve and the defendant shall have the children for Christmas Day; February break, the defendant shall have the children for the February break, the plaintiff shall have the children for the spring break.
 7. The defendant shall pay unallocated alimony and child support of $500.00 a week for seven (7) years and thereafter alimony of $400.00 per week until the plaintiff dies, remarries or cohabits within the meaning of the statutes.
 8. The defendant will pay all the expenses of the two sons who reside with him and will reimburse the plaintiff for all expenses she advances for them. The plaintiff will pay all the expenses of Nathaniel while he resides with her.
 9. Each party shall own, free and clear, all personal property in his/her possession except that items belonging to the plaintiff may be removed by her from the defendant's present home in accordance with his statement that he has no objection to her doing that.
10. The defendant shall provide medical insurance for the three sons and will pay uninsured medical, dental, orthodontic, ophthalmological and therapy expenses of the two sons living with him. The uninsured expenses of the same nature for Nathaniel shall be shared equally by the parties.
11. a. The Lanfer Trust and Protein Corporation stock will be the sole property of the defendant.
 b. The defendant will transfer to the plaintiff one half of the 62 shares of New England Dairy stock issued to him. The defendant shall take whatever steps are necessary to obtain the release of that stock from Robo Bank including paying whatever outstanding obligation may be required to effectuate this purpose and/or providing different collateral for the loan in question.
 c. The defendant shall transfer to the plaintiff retirement assets presents in his name in the amount CT Page 2342 of $40,000.00 with the allocation of the different accounts to be worked out by counsel for the parties.
 d. The debt claimed by the plaintiff's mother in the amount of $60,000.00 shall be repaid to her out of the Alpine Fund. The balance of the Alpine Fund shall then be divided equally between the parties.
 e. The defendant shall also pay the plaintiff the amounts advanced by her for taxes which the court ordered him to pay and which he has not so far paid. That amount shall be paid within thirty (30) days of the entry of this judgment.
12. The defendant shall be entitled to use the two children living with him as deductions for federal and state taxes. The plaintiff shall be entitled to claim Nathaniel as a deduction on her federal and state taxes.
13. The defendant shall transfer his membership in the Rocky Point Club to the plaintiff.
14. The defendant shall indemnify and hold the plaintiff harmless for all income tax liability for all years through 1989.
15. The plaintiff's application for a name change to Samantha Lanfer is hereby granted and judgment may enter accordingly.
16. The defendant shall be responsible for his alleged debt to his mother, his rent, his back rent on his residence, his 1989 tax obligation to the IRS, his credit card debts, and his debts to the banks.
17. Each party shall pay his/her own counsel fees.
18. The parties having signed a waiver of right to immediate wage withholding order, a contingent wage withholding order shall issue.
MARGARET C. DRISCOLL, STATE TRIAL REFEREE