******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CODY B. HEISINGER *v.* ANN H. DILLON ET AL.
(AC 37967)

IN RE PROBATE APPEAL OF
CODY B. HEISINGER*
(AC 37969)

Beach, Sheldon and Sullivan, Js.

*Argued May 16—officially released September 27, 2016*

(Appeals from Superior Court, judicial district of
Hartford, Complex Litigation Docket, Dubay, J.)

*Ralph P. Dupont*, for the appellant (plaintiff).

*James R. Fogarty*, for the appellee (named
defendant).

*Linda L. Morkan*, with whom, on the brief, was
*Christopher J. Hug*, for the appellees (defendant Robert
A. Bartlett, Jr., et al.).

*Opinion*

SHELDON, J. In these two related actions, the plaintiff, Cody B. Heisinger, appeals from the summary judgments rendered by the trial court in favor of the defendant Ann H. Dillon, and the defendant trustees Robert Bartlett, Jr., and Frederick M. Tobin. Both actions arise from a dispute between the plaintiff and the trustees concerning the latters' decision, following the death of Frank Heisinger, the plaintiff's father and Dillon's brother, to distribute income from a certain trust that previously was payable to Frank Heisinger to Dillon rather than to the plaintiff. In 1950, Francis Bartlett, the plaintiff's great grandfather and Dillon's grandfather, drafted a will in which he created a trust to benefit his descendants. Pursuant to the terms of the trust, Frank Heisinger and Dillon each began to receive a 25 percent share of the trust income upon the death of their mother, Jane Bartlett Heisinger, in 1991. Upon Frank Heisinger's death in 2007, the trustees began to distribute his 25 percent share of the trust income to Dillon. The plaintiff, claiming that that share should then be distributed to him, as his father's sole heir, instead of to Dillon, initiated these two actions. In the first action, *Cody B. Heisinger* v. *Ann H. Dillon et al.* (AC 37967) (declaratory judgment action), the plaintiff sought a declaratory judgment against Dillon and the trustees, construing the trust to provide that following his father's death, the trust income formerly distributed to his father should be distributed to him rather than to Dillon. In the second action, *In re Probate Appeal of Cody B. Heisinger* (AC 37969) (probate action), the plaintiff appealed from a Probate Court order approving an interim accounting of the trust's assets, including distributions to Dillon of income previously distributed to Frank Heisinger before his death. After all parties in the two actions filed and argued motions for summary judgment, the trial court concluded that the plaintiff was not entitled to receive his deceased father's distribution of trust income, and thus rendered summary judgment in favor of the defendants in both actions. The plaintiff appeals, claiming that the trial court erred in construing the trust not to entitle him to receive his father's share of the trust income. We disagree with the plaintiff, and we thus affirm the summary judgment rendered in favor of the defendants in the declaratory judgment action and dismiss the appeal in the probate action as moot.

The following undisputed facts are relevant to this appeal. Francis A. Bartlett signed his last will and testament on December 11, 1950. The will created a trust for the benefit of his descendants, the corpus of which was funded by the common and preferred stock of the F. A. Bartlett Tree Expert Company and the Bartlett Realty Company. The provisions of the will directed that the income of the trust would be paid to his wife,

Myrtle K. Bartlett, until her death, and then paid in equal shares to his two children, Robert A. Bartlett and Jane Bartlett Heisinger, for and during their respective lives.[1] The will further provided that when Robert A. Bartlett or Jane Bartlett Heisinger died, his or her half of the trust income would be paid thereafter to his or her respective children.[2] The will did not expressly provide for how income of the trust that was payable either to the children of Robert A. Bartlett, on the one hand, or to the children of Jane Bartlett Heisinger, on the other, would be distributed among his or her surviving children upon the death of one or more, but not all, of such children. It did, however, provide for the separate termination of the trust in two equal portions, one for the benefit of Robert A. Bartlett's descendants and the other for the benefit of Jane Bartlett Heisinger's descendants, as follows. Upon the death of Jane Bartlett Heisinger's last surviving child who was in being at the time of Francis Bartlett's death, the Heisinger portion of the trust would terminate and 50 percent of the trust principal would be distributed to her children, with any children of those children taking a deceased parent's share, per stirpes. Upon the death of Robert A. Bartlett's last surviving child who was in being at the time of Francis Bartlett's death, the Bartlett portion of the trust would terminate and the other 50 percent of the trust principal would be distributed to his children and/or grandchildren in the same manner.[3]

When Jane Bartlett Heisinger died in 1991, the trustees began to distribute one half of the trust income, in two equal shares of 25 percent each, to her two children: Frank Heisinger and Dillon. Frank Heisinger died in 2007,[4] after which the trustees began to distribute his 25 percent share of the trust income to Dillon. The plaintiff claims that this 25 percent share should be paid to him.

On July 18, 2013, the plaintiff filed a revised complaint in the declaratory judgment action, which was the operative complaint at the time of the court's summary judgment ruling. In that three count complaint, the plaintiff (1) sought advice, pursuant to General Statutes §§ 52-1[5] and 52-29,[6] and Practice Book §§ 17-54[7] through 17-59, as to his entitlement to his father's share of the trust income after his death; (2) sought damages from the trustee defendants for breach of fiduciary duty; and (3) sought damages and prejudgment interest from Dillon for unlawfully receiving and retaining the share of trust income to which the plaintiff claims he is entitled.

The plaintiff filed a complaint in the probate action on August 26, 2013, claiming that he was aggrieved by the Probate Court's approval of an interim accounting of the trust for the period from January 1, 2009 through December 31, 2011. The plaintiff requested an order and judgment that the Probate Court lacked subject

matter jurisdiction to issue its order and decree approving the interim accounting of the trust and an order and decree that the interim accounting be held in abeyance pending the outcome of the declaratory judgment action. In the alternative, the plaintiff requested that the interim accounting be accepted without res judicata or collateral estoppel effect pending final determination of the declaratory judgment action.

All of the parties filed motions for summary judgment in both the declaratory judgment action and the probate action.[8] The trial court heard argument on all of the motions for summary judgment[9] together on April 13, 2015. On May 4, 2015, it issued a single memorandum of decision granting the defendants' motions for summary judgment in both actions. The court explained its decision as follows: "[T]he proper starting point for the court's analysis is the language of the trust. As previously stated, the clause at issue provides, in relevant part as follows: 'Upon the death of my daughter, Jane Bartlett Heisinger . . . I direct that one-half of the net income from said trust fund be paid to the children of my said daughter, in equal shares, *until the death of her last surviving child, who was in being at the time of my death, and upon the death of said last surviving child of my said daughter, in being at the time of my death*, I give, devise and bequeath one-half of the principal of said trust fund to the children of my said daughter, in equal shares, freed from said trust, the children of any deceased grandchild to take the share which the parent would have taken, if living, per stirpes and not per capita, freed from said trust.' . . .

"The highlighted language clearly provides that Jane Bartlett Heisinger's children (Frank Heisinger and Ann Dillon) are to receive her portion of the trust income, in equal shares, until the death of her last surviving child that was in being at the time of Francis A. Bartlett's death. Frank Heisinger was born in 1950 and Ann Dillon was born in 1953. Francis A. Bartlett died in 1963. The plaintiff, on the other hand, was not born until 1985. Therefore, he was plainly not a life in being at the time of Francis A. Bartlett's death. The highlighted language indicates that it was Francis A. Bartlett's intent to provide trust income to Jane Bartlett Heisinger's children, in equal shares, until the death of her last child. As we know, Jane Bartlett Heisinger's daughter, the defendant Dillon, is still alive. As a result, Dillon is entitled to the full 'Heisinger portion' of the trust income until her death. Thereafter, 'the children of any deceased grandchild,' such as the plaintiff, will take 'the share which the parent would have taken, if living, per stirpes and not per capita, freed from said trust.' " (Emphasis in original.)

The court rejected the plaintiff's contention that *Stanley* v. *Stanley*, 108 Conn. 100, 142 A. 851 (1928), stands for the dispositive proposition that " 'when there

are multiple income beneficiaries, a surviving income beneficiary is not entitled to the entire trust income'." Rather, the trial court stated that the court in *Stanley* was merely "interpreting the language of a specific testamentary document," not "[setting] forth a general rule of testamentary construction . . . ."

The court then reasoned that the default rules of construction set forth in the Restatement (Second) of Trusts supported its conclusion, noting that it is "proper for the court to use the Restatement (Second) of Trusts, which was published in 1959, as opposed to the relevant section of the Restatement (Third) of Trusts, which was not published until 2003, because the relevant law is that which was in existence at the time of the drafting of the trust document at issue."

On appeal, the plaintiff claims that the trial court erred in rendering summary judgments in favor of the defendants and requests that we reverse those judgments and remand the case with direction to render partial summary judgment in his favor in the declaratory action as to his entitlement to receive his father's share of the trust income following his father's death.[10] The defendants maintain that the trial court properly interpreted the trust to require that Frank Heisinger's share of the trust income be paid to Dillon until her death.[11] The parties agree that a decision interpreting the trust in favor of the defendants in the declaratory judgment action also would be conclusive of the probate action.[12]

The plaintiff argues that the language of the trust does not expressly provide for the distribution of trust income upon his father's death. Accordingly, he argues that we should turn to provisions in the Restatement (Third) of Trusts and the Restatement (Third) of Property to supply the default construction rules. The defendants argue, however, that the intent of Francis Bartlett is clear, and that, if we conclude that it is not, we should look to the Restatement (Second) of Trusts and the Restatement (First) of Property, which were in existence closer to the time his will was drafted.

"Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . In evaluating the propriety of a summary judgment, we are confined to an examination of the pleadings and affidavits of the parties to determine whether (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law." (Citation omitted; internal quotation marks omitted.) *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995). Here, the only determination necessary is

whether the moving party is entitled to judgment as a matter of law because "[t]he construction of a will presents a question of law"; (internal quotation marks omitted.) *Corcoran* v. *Dept. of Social Services*, 271 Conn. 679, 698, 859 A.2d 533 (2004); and there are no disputed material factual issues. Finally, "[s]ummary judgment rulings present questions of law; accordingly, [o]ur review of the . . . decision to grant [a] . . . motion for summary judgment is plenary." (Internal quotation marks omitted.) *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, 308 Conn. 146, 154, 61 A.3d 485 (2013).

We first turn to the language of the will in order to determine the intent of the testator. "It is well settled that in the construction of a testamentary trust, the expressed intent of the testator must control." *Gimbel* v. *Bernard F. & Alva B. Gimbel Foundation, Inc.*, 166 Conn. 21, 26, 347 A.2d 81 (1974). "In seeking the intention of the testator, resort must first be had to the will itself." *Hoenig* v. *Lubetkin*, 137 Conn. 516, 519, 79 A.2d 278 (1951).

We conclude that the intent of Francis Bartlett, as expressed in his will, is clear: if Frank Heisinger predeceased his sister, Dillon, his share of the trust income must be paid to Dillon for her lifetime. Contrary to the plaintiff's reading of the will, it does not evince an overall purpose of providing an *income stream* to Francis Bartlett's great grandchildren. The will provides that income shall "be paid to the children of [Jane Bartlett Heisinger], in equal shares, until the death of her last surviving child, who was in being at the time of [Francis Bartlett's] death." The condition of "the death of [Jane Bartlett Heisinger's] last surviving child" has not occurred and, regardless, the plaintiff is not a child of Jane Bartlett Heisinger, and thus is not entitled to a distribution of income.

Francis Bartlett was aware of how to draft a provision in which a great grandchild would take in place of a deceased grandchild. In distributing the trust principal, the will states, "[T]he children of any deceased grandchild to take the share which the parent would have taken, if living, per stirpes . . . ." The distribution of income, however, is limited to Francis Bartlett's wife, children, and grandchildren.

Notably, even the language distributing the trust principal upon the termination of the trust focuses on Francis Bartlett's grandchildren, not his great grandchildren: "I give devise and bequeath one-half of the principal of said trust fund to the children of my said [son/daughter], in equal shares, freed from said trust, the children of any deceased grandchild to take the share which the parent would have taken, if living, per stirpes and not per capita, freed from said trust." The will thus supports the conclusion that Francis Bartlett's intention in creating the trust was to have trust income payable only to

his wife, his children and his grandchildren, during their lifetimes, while reserving only per stirpes distributions of the trust's remaining principal, upon its termination, for his great grandchildren.

Because we have concluded that the intent of the testator is clear, it is not necessary for us to turn to default rules of construction. We note, however, that if it were necessary to resort to a default rule of construction, the default rule of construction in existence at the time the will was drafted would govern. *Hartford National Bank & Trust Co.* v. *Birge*, 159 Conn. 35, 43, 266 A.2d 373 (1970) ("[an attorney] may be assumed to have been familiar with accepted rules of construction as of the time the will was drawn"). Although the Restatement (Second) of Trusts had not yet been published at the time Francis Bartlett's will was drafted, the rules announced therein support our construction of the trust and is an expression of the default rules of construction in existence in 1950.

Section 143 (2) of the Restatement (Second) of Trusts provides: "If a trust is created under which the income is payable to two or more beneficiaries and the principal is payable to another on the death of the survivor of the income beneficiaries, and one of them dies, the survivor or survivors are entitled to the income until the death of the last survivor, unless the settlor manifested a different intention." Comment (b) to § 143 (2) provides: "Where the income under a trust is payable to several beneficiaries, and there is a gift over to another on the death of the survivor of the beneficiaries, and one of the beneficiaries dies, the disposition of the share of the income which was payable to the deceased beneficiary depends upon the settlor's manifestation of intention. Where there is no provision in the terms of the trust as to its disposition, the question is what the settlor would probably have intended. Usually the inference is that he intended that the income should be divided among the surviving beneficiaries. This is true even though the beneficiaries are not referred to as a class. It may appear from the circumstances, however, that the settlor would have preferred that the income should be paid to the estate of the deceased beneficiary, until the death of the last surviving beneficiary. Or it may appear that he intended the income to be paid to or accumulated for the beneficiary in remainder. Or it may appear that he did not intend to make any disposition of the share of the income of the deceased beneficiary, in which case the income would be payable to the settlor's estate until the death of the last surviving beneficiary. See Restatement of Property, § 115."[13] 1 Restatement (Second), Trusts § 143 (2), p. 303 (1959).

The Restatement (Second) of Trusts is an expression of the rules of construction in existence in 1950, as demonstrated by its citation to cases decided before 1950. See 3 Restatement (Second), Trusts § 143, Appen-

dix, reporter's notes, p. 218 (1959), citing *Loring* v. *Coolidge*, 99 Mass. 191, 191 (1868); *Clarke* v. *Rathbone*, 221 Mass. 574, 109 N.E. 651 (1915); *Old Colony Trust Co.* v. *Treadwell*, 312 Mass. 214, 43 N.E.2d 777 (1942); *Camden Safe Deposit & Trust Co.* v. *Fricke*, 99 N.J. Eq. 506, 133 A. 882 (1926); *Rhode Island Hospital Trust Co.* v. *Thomas*, 73 R.I. 277, 54 A.2d 432 (1947); *Will of Levy*, 234 Wis. 31, 289 N.W. 666, 290 N.W. 613 (1940).

Finally, the cases relied upon by the plaintiff, *Hartford-Connecticut Trust Co.* v. *Gowdy*, 141 Conn. 546, 107 A.2d 409 (1954), and *Stanley* v. *Stanley*, supra, 108 Conn. 100, do not set forth a general rule of construction that is different from that in the Restatement (Second) of Trusts. Those cases merely interpret the language of the specific documents at issue. "Indeed, in the construction of a will or trust, precedents are usually inconclusive, since the same or substantially similar expressions seldom occur in different wills or trust agreements. And precedents are entitled to little weight where they do not involve precisely analogous language used by testators or settlors who are surrounded by like circumstances at the execution of the will or trust agreement. In each case, it is the intention expressed by the particular language employed which must be construed." *Hartford National Bank & Trust Co.* v. *Birge*, supra, 159 Conn. 42–43.

The plaintiff urges us to rely on § 49 of the Restatement (Third) of Trusts[14] and § 26.9 of the Restatement (Third) of Property;[15] however, those sections were published in 2003 and 2011, respectively. An attorney drafting a will cannot be expected to be familiar with default rules of construction published more than one-half of a century later.

Even so, the plaintiff maintains that the rules promulgated in the Restatement (Third) of Trusts do not conflict with the provisions in the Restatement (Second) of Trusts, but rather describe an exception for multigenerational and multibeneficiary trusts that was not described in the Restatement (Second) of Trusts. The plaintiff, however, has not presented any legal authority upon which we could conclude that such an exception was an accepted rule of construction in 1950. Even if it were the prevailing default rule of construction at that time, it would not override the testator's intent, which we have found to be clear in this case. Accordingly, the trial court did not err in construing Francis Bartlett's will to exclude the plaintiff from receiving income from the trust after his father's death, and thus properly granted summary judgment on that ground. Because we reach that conclusion, the plaintiff's appeal in the probate action is moot.

The judgment is affirmed in the declaratory judgment action. The appeal in the probate action is dismissed as moot.

In this opinion the other judges concurred.

* The appeal in the second case originally was filed with the caption *Cody B. Heisinger* v. *Probate Appeal.* The caption has been changed to reflect that the Probate Appeal is not a party. It should be noted that the microfiche version of the Appellate Court Record and Briefs in this case will be found under the original title.

[1] The will directed the trustees "to pay the net income therefrom, quarter-annually, to my wife, Myrtle K. Bartlett, for and during the term of her natural life, and upon her death, or should she predecease me, then I direct that the net income from said trust fund be paid, in equal shares, quarter-annually, to my son, Robert A. Bartlett, and my daughter, Jane Bartlett Heisinger, for and during the term of their respective lives."

[2] The will provided: "Upon the death of my son, Robert A. Bartlett, or should he predecease me, and my wife, then upon the death of my wife I direct that one-half of the net income from said trust fund be paid to the children of my said son, in equal shares, until the death of the last surviving child of my son who was in being at the time of death, and upon the death of said last surviving grandchild in being at the time of death, I give devise and bequeath one-half of the principal of said trust fund to the children of my said son, in equal shares, freed from said trust, the children of any deceased grandchild to take the share which the parent would have taken, if living, per stirpes and not per capita, freed from said trust. . . .

"Upon the death of my daughter, Jane Bartlett Heisinger, or should she predecease me, and my wife, then upon the death of my wife, I direct that one-half of the net income from said trust fund be paid to the children of my said daughter, in equal shares, until the death of her last surviving child, who was in being at the time of my death, and upon the death of said last surviving child of my said daughter, in being at the time of my death, I give, devise and bequeath one-half of the principal of said trust fund to the children of my said daughter, in equal shares, freed from said trust, the children of any deceased grandchild to take the share which the parent would have taken, if living, per stirpes and not per capita, freed from said trust."

[3] The will also provided for the distribution in the event that Jane Bartlett Heisinger died without leaving any surviving children: "In case my said daughter shall die without leaving her surviving any children, then I direct that all of the net income from said trust fund be paid to my said son, Robert A. Bartlett, as aforesaid, and upon his death, I give devise and bequeath the net income from said trust fund to his children, in equal shares, until the death of his last surviving child who was in being at the date of my death, and upon the death of said last surviving child, in being at the time of my death, I give, devise and bequeath the principal of said trust fund to the children of my said son, in equal shares, freed from said trust, the children of any deceased grandchild to take the shares which the parent would have taken, if living, per stirpes and not per capita, freed from said trust." The trust had a parallel provision in the event that Robert A. Bartlett died without leaving any surviving children.

[4] The parties dispute when Frank Heisinger died; Dillon's appellate brief states that he died in 2008.

[5] General Statutes § 52-1 provides: "The Superior Court may administer legal and equitable rights and apply legal and equitable remedies in favor of either party in one and the same civil action so that legal and equitable rights of the parties may be enforced and protected in one action. Whenever there is any variance between the rules of equity and the rules of the common law in reference to the same matter, the rules of equity shall prevail."

[6] General Statutes § 52-29 (a) provides: "The Superior Court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment."

[7] Practice Book § 17-54 provides: "The judicial authority will, in cases not herein excepted, render declaratory judgments as to the existence or nonexistence (1) of any right, power, privilege or immunity; or (2) of any fact upon which the existence or nonexistence of such right, power, privilege or immunity does or may depend, whether such right, power, privilege or immunity now exists or will arise in the future."

[8] On November 3, 2014, the plaintiff filed a motion for summary judgment in the declaratory judgment action, and on December 9, 2014, the trustee defendants filed a cross motion for summary judgment in the declaratory judgment action and a motion for summary judgment in the probate action. The following day, Dillon filed a cross motion for summary judgment in the declaratory judgment action and a motion for summary judgment in the

probate action. On February, 23, 2015, the plaintiff filed a motion for summary judgment against Dillon in the probate action.

[9] Although no motion to consolidate was ever filed, the trial court addressed all of the motions for summary judgment in a single memorandum of decision.

[10] The parties do not dispute that the "Heisinger portion" of the trust principal will not be distributed until the passing of Dillon, at which point the plaintiff will be entitled to Frank Heisinger's share of the trust principal.

[11] Dillon asserted as an alternative ground for affirmance that the first accounting approved by the Probate Court is entitled to full faith and credit under General Statutes § 45a-24. We will not address this alternative ground in light of our conclusion that summary judgment was properly rendered.

[12] In the probate action, the plaintiff claims that the Probate Court lacked subject matter jurisdiction to approve the interim trust accounting before final judgment was rendered in the declaratory judgment action. Assuming that jurisdiction existed, the plaintiff also reiterated his claim that he is entitled to his father's share of the trust income. Because we conclude that the plaintiff is not entitled to his father's share of the trust income, his claims in the probate action are moot, and we will not address them. "Mootness raises the issue of a court's subject matter jurisdiction and is therefore appropriately considered even when not raised by one of the parties. . . . Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction. . . . We begin with the four part test for justiciability established in *State* v. *Nardini*, 187 Conn. 109, 445 A.2d 304 (1982). . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . [I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *In re Jorden R.*, 293 Conn. 539, 555–56, 979 A.2d 469 (2009).

[13] Section 115 of the Restatement (First) of Property provides: "When an otherwise effective conveyance creates concurrent estates for life held as a tenancy in common, and also creates a future estate limited to take effect on the death of the survivor of the expressly designated life tenants, then, in the absence of a manifestation of an inconsistent intent, such conveyance also creates in favor of each such life tenant a remainder estate for life in the share of each other such life tenant, which remainder takes effect in possession only if the first life tenant outlives the life tenant as to whose share such remainder estate is created." 1 Restatement (First), Property § 115, p. 359 (1936).

[14] Comment (c) (3) to § 49 of the Restatement (Third) of Trusts provides in relevant part: "Where the terms of the trust make no express provision for the situation, the normal inference is that the settlor intended the income share to be paid to the issue (if any) of the deceased income beneficiary in the typical case of this type in which the remainder is to pass to the descendants of the income beneficiaries upon the survivor's death. This presumed result applies whether or not the beneficiaries are described in class terminology. It may appear from language of the trust or the circumstances, however, that the settlor would have preferred: (i) that the income be paid to or divided among the surviving income beneficiary or beneficiaries (as 'cross remainder'), even if the beneficiaries are not described as a class . . . ." 2 Restatement (Third), Trusts § 49, comment (c) (3), p. 247 (2003).

[15] Comment (e) (1) to § 26.9 of the Restatement (Third) of Property provides in relevant part: "A gap potentially arises if the terms of the trust direct that the trust principal is to be distributed on the death of the last living income beneficiary, and if the terms of the trust make no express provision for the distribution of the share income that a deceased income beneficiary other than the last living income beneficiary had been receiving. . . .

"A gap arises if the income beneficiary's income interest is limited to the beneficiary's lifetime. The traditional rule of construction is that the gap is filled by an implied cross remainder to the living income beneficiary or

beneficiaries. See Restatement [(First)] of Property § 115; Illustration 3. An exception, however, arises if the remainder in trust principal is to pass to the issue of the beneficiaries upon the survivor's death. In such a case, filling the gap by implying an income interest in favor of the deceased beneficiary's issue from time to time living would be more consistent with the transferor's overall plan of disposition." 3 Restatement (Third), Property § 26.9, comment (e) (1), p. 541 (2011).

———————————————